**Herbert P. SEGARRA, Plaintiff,**

v.

**Florence MESSINA and Kevin C. Forgarty, Defendants.**

No. 93–CV–284.

United States District Court, N.D. New York.

Feb. 25, 1994.

Herbert P. Segarra, pro se.

Bizar & Martin, New York City, for Kevin Fogarty; Donald R. Wall, of counsel.

Wikler, Gottlieb & Howard, New York City, for Florence Messina; Thomas J. Spargo, of counsel.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

Pursuant to Fed.R.Civ.P. 12(b)(6), all facts in the complaint are presumed to be true.

Plaintiff is an attorney and an Albany resident; defendant Florence Messina (Messina) is a New Jersey resident and defendant Kevin Fogarty (Fogarty) is a New York resident. The complaint traces the history of plaintiff's relationship with William J. Foley (Foley) from the time they first met in 1957 until Foley's death in July 1988. The complaint alleges that a close relationship existed between plaintiff and Foley leading to Foley's relocation in 1981 from his native Brooklyn to plaintiff's home in Albany.

The complaint alleges that Foley disliked defendant Messina, his niece, and that he executed a will which left Messina nothing. Plaintiff met Messina for the first time in November, 1982, when she visited Foley (who was then residing with the plaintiff) to question Foley about a power of attorney granted to plaintiff.

On March 1, 1984, plaintiff with his spouse and Foley purchased a home as joint tenants with right of survivorship, funded in part with Foley's money, in lieu of Foley's offer to make plaintiff a gift.

Plaintiff alleges that the defendants' first wrongful act was committed in or about June, 1986 when Fogarty and Messina, as part of an alleged conspiracy, visited a rental property in Brooklyn, New York, owned by

Foley. It is alleged that they advised the tenants not to make rental payments to Foley because they were going to take away Foley's property and control it themselves. On August 20, 1986, allegedly in furtherance of this conspiracy, Messina, with Fogarty's assistance, petitioned Kings County Supreme Court for the appointment of a conservator over Foley's estate. In February 1987, a "hotly-contested" four day hearing commenced resulting in the appointment of Fogarty as conservator. According to the complaint, the subject matter of the conservatorship hearing was not a hearing on Foley's abilities, "but an attempt to discredit and malign plaintiff." (Pltf. Compl. ¶ 25). Plaintiff appealed the order of appointment which resulted in a remand back to Supreme Court. The matter was, however, declared moot when Foley died on July 2, 1988.

On July 22, 1988, a will dated February 6, 1984, was offered for probate in Albany County Surrogate's Court. In September 1988, Fogarty applied for letters of administration over the estate but the application was denied.

Messina and her brother John McNiece filed objections to the offered will asserting undue influence and lack of testamentary capacity. They also alleged that plaintiff had dishonestly dealt with Foley. Discovery proceedings were held concerning the will contest. During an examination before trial, plaintiff allegedly discovered that Fogarty had committed numerous acts of misfeasance and malfeasance in connection with his conservatorship of Foley's estate. The complaint alleges that Fogarty committed acts of perjury and "perpetuated the fraud" when Fogarty's attorneys allegedly submitted an affirmation to the state court dated July 11, 1989 denying the payment of unauthorized legal fees and also denying the breaches of fiduciary duty complained of by plaintiff. Plaintiff further alleges that Fogarty had received and wasted monies intended for the personal use and welfare of Foley, monies which were provided for by the Veteran's Administration. The complaint also alleges

that an additional act of perjury was committed when Fogarty caused his attorneys to apply to the state court for the payment of legal fees which included those fees already received by him. The complaint alleges that these actions constitute the filing of false information under New York Penal Law § 170.35 [1] and thus, are violative of 38 U.S.C. § 6103(a) (dealing with fraudulent application for veteran's benefits).

Finally, the complaint alleges that Fogarty committed additional perjury and "perpetuated the fraud" via an affidavit submitted by Fogarty's attorneys sworn to on April 5, 1989 seeking the payment of legal fees, including fees incurred in connection with Fogarty's application for letters of administration before the Albany County Surrogate's Court. The complaint alleges that this application for fees was unwarranted, was not in the best interest of the estate, was in breach of fiduciary duty and constituted over-reaching and common-law extortion in violation of 38 U.S.C. § 6101(a).

The complaint alleges that on February 22, 1990, Messina, joined by her brother John McNiece, entered into a stipulation of settlement wherein they agreed to withdraw their objections to the will and to plaintiff's relationship with Foley. In exchange, they would receive a payment of $125,000 plus $13,000 in legal fees. The stipulation was later "made into a final contract of settlement" when the court issued a decree on April 26, 1990. Based on this settlement, the Surrogate's Court declared that Foley was of sound mind when he executed the will and admitted the offered will into probate under the terms of the parties' settlement stipulation.

The plaintiff alleges that due to the poor condition of Foley's estate caused by Fogarty's misconduct as conservator, plaintiff was unable to pay Messina and John McNiece in accordance to the terms of the contract.

On or about June 12, 1991, Messina and Fogarty filed a disciplinary complaint against plaintiff with the Committee on Professional Standards for the Third Judicial Department

---

**1.** This section deals with "criminal possession of a forged instrument" and its relevance to this

action is unknown.

alleging that plaintiff had been unethical in dealing with Foley and his creditors. The plaintiff states that these allegations were mere conjecture and "uttered with a plan to further impugn the honesty and character of the plaintiff." The complaint alleges that in an appearance before the committee on December 1, 1992, Fogarty further committed perjury by stating under oath that he knew nothing about Messina's application in King's County Supreme Court for conservatorship.

From these acts, plaintiff alleges mail fraud, wire fraud, obstruction of justice and several state law violations as predicate acts to his civil RICO claim. The plaintiff also brings two pendent state claims for misrepresentation and defamation. Plaintiff seeks $10,000,000 for injury to his reputation and $343,711 for injury to Foley's estate.

Before delving into our analysis, a brief description of the procedural background of the case at bar is in order. The defendants' original motion to dismiss pursuant to Fed.R.Civ.P. 8(a), 9(b) and 12(b)(6) was made returnable on August 9, 1993. The motion was adjourned four times for various reasons and was ultimately made returnable on February 14, 1994. Prior to the return date of February 14, 1994, the defendants made two additional motions: (1) motion for summary judgment pursuant to Fed.R.Civ.P. 56; and (2) motion for sanctions pursuant to Fed.R.Civ.P. 11 and also pursuant to the inherent powers of the court. These two additional motions were made returnable on February 14, 1993, and the court was to hear all three pending motions on this date. The plaintiff, however, failed to file opposition papers to the motions for summary judgment and sanctions and thus, another adjournment was granted and the motions are now returnable February 25, 1993.[2]

It is also worth noting that between the time defendants made their motion to dismiss and their motion for summary judgment, plaintiff, who is an attorney, was censured by the Appellate Division, Third Department. The censure was the result of a complaint lodged to the disciplinary committee by one of the defendants.

2. The court will allow no more than one adjourn-

The court will now address the outstanding motions *seriatim.*

## II. DISCUSSION

Defendants move to dismiss plaintiff's claims on the ground that the complaint fails to satisfy the requirements of Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

■■■ Fed.R.Civ.P. 8(a) requires that the pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This is mandated by the Federal Rules of Civil Procedure to provide notice so that a proper defense may be prepared by the defendant. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). Where a pleading fails to satisfy the requirements of Rule 8(a), the district court has discretion to dismiss the pleadings. *Id.*

■■■ Moreover, when fraud is alleged in the complaint, Rule 9(b) of the Federal Rules of Civil Procedure must be read in conjunction with Rule 8(a). Rule 9(b) states

[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). "To pass muster under Rule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990); *see Di Vittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Although scienter itself need not be alleged with great specificity, *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), some factual allegations must be present as a basis for the conclusory allegations of intent. "Allegations of scienter are sufficient if supported by facts giving rise to a 'strong inference' of fraudulent intent." *Ouaknine,* 897 F.2d at 80 (citing *Beck,* 820 F.2d at 50).

ment for failure to file opposition papers.

## A. RICO

The plaintiffs' first cause of action is under RICO, 18 U.S.C. § 1961 *et seq.* They have not indicated under which subsection of § 1962 they plan to proceed. In any event, one of the common elements throughout § 1962, and hence a material fact which the plaintiffs must allege in their complaint, is that the defendants engaged in "a pattern of racketeering activity". *See* 18 U.S.C. § 1962(a)–(d); *Qantel Corp. v. Niemuller,* 771 F.Supp. 1361 (S.D.N.Y.1991). A pattern of racketeering activity is a series of *criminal acts* as defined in § 1961(1). *See Procter & Gamble Co. v. Big Apple Industrial Buildings, Inc.,* 879 F.2d 10 (2d Cir.1989). Consequently, the plaintiffs must first prove that the defendants engaged in "racketeering activity" as defined in 18 U.S.C. § 1961(1), and they must then prove that this activity constituted a pattern as that term has been defined by Congress and the Supreme Court.

"Racketeering activity" is defined to include, among other federal offenses, mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), obstruction of justice (18 U.S.C. § 1503) and such state offenses as extortion. *See* 18 U.S.C. § 1961(1). In RICO parlance these actions are referred to as predicate acts. The complaint in the instant case alleges mail fraud, wire fraud, obstruction of justice, larceny, extortion, defamation and libel as the predicate acts.

 Initially, the defendants argue that the record is devoid of the essential elements of mail or wire fraud. To show a violation of the mail and wire fraud statutes, the plaintiff must show 1) participation in a scheme to defraud and 2) knowing use of the interstate mails or interstate wires to further the scheme. *Crabtree v. Tristar Automotive Group, Inc.,* 776 F.Supp. 155, 165 (S.D.N.Y. 1991). The Court in *Crabtree* stated that plaintiff must set out, with particularity, the allegedly numerous uses of the mails and wires on behalf of the scheme to defraud. *Id.* "In alleging mail fraud, the plaintiff must set forth the contents of the items mailed and specify how each of the items was false and misleading." *Id.* (quoting *Official Publications, Inc. v. Kable News Co., Inc.,* 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part, rev. in part,* 884 F.2d 664 (2d Cir. 1989)).

 1) WIRE FRAUD—The plaintiff has failed to allege any of the above requirements for wire fraud. The complaint states "[t]he use of intrastate and interstate wire communications was an integral part of the artifices to defraud described in this complaint. These include interstate telephone conversations with, and among the defendants, during the period covered in this complaint." (Pltf.Compl. ¶ 50). This bare allegation is not enough to satisfy the requirements of Rule 9(b). As stated earlier, a claim of wire fraud under the RICO statute must allege with specificity the alleged numerous uses of wires in furtherance of the fraud. *Crabtree,* 776 F.Supp. at 165. The plaintiff has failed to allege any instances where the defendants used wire communications in connection with the alleged acts. This failure is fatal, and thus, plaintiff's RICO claim predicated on wire fraud is hereby dismissed.

2) MAIL FRAUD—Plaintiff's sole allegation of mail fraud appears in paragraph 49 of the complaint. The plaintiff alleges that "the mailing of the June 12, 1992 [3] letter to the Committee on Professional Standards [and] the mailing of sworn affidavits denying the payment of unauthorized fees" constitute predicate acts under the RICO statute.

The elements of mail fraud are two-fold: first, that the defendant willfully and knowingly devised a scheme or artifice to defraud, or a scheme for obtaining money or other property by means of false pretenses, representations or promises; and second, that the defendant used the United States Postal Service by mailing, or causing to be mailed, some matter or thing for the purpose of executing the scheme to defraud. *See* 18 U.S.C. § 1341. Moreover, allegation of factual circumstances giving rise to a strong inference that the defendants had the requi-

---

**3.** In paragraph 45 of the complaint, the date stated for this event was June 12, 1991. No one seems to have noticed this inconsistency.

site fraudulent intent must be shown in order to comply with the Rule 9(b) requirements. *Ouaknine,* 897 F.2d at 80.

The plaintiff has alleged that the mailing of a letter to the Committee on Professional Standards and attorneys' affidavits caused to be submitted by defendants denying the payments of unauthorized fees constituted mail fraud. None of these alleged predicate acts of fraud is pled with the particularity required by Rule 9(b). These are merely blanket allegations of wrongdoing. This inadequacy in the pleading is compounded by plaintiff's failure to properly plead that the individual acts of fraud were undertaken as part of any "scheme or artifice to commit fraud" as required under the mail fraud statute. *See United States v. Starr,* 816 F.2d 94, 98 (2d Cir.1987).

The plaintiff has failed to satisfy the requirements of Rule 9(b), and thus, plaintiff's RICO claim predicated on mail fraud is also dismissed. The remaining predicate acts alleged under the RICO statute is now analyzed under the motion to dismiss pursuant to Rule 12(b)(6).

### B. RULE 12(B)(6)

On a motion to dismiss, the facts alleged by the plaintiff are assumed to be true and must be liberally construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). While the court need not accept mere conclusions of law, the court should accept the pleader's description of what happened along with any conclusions that can reasonably be drawn therefrom. *Murray v. City of Milford,* 380 F.2d 468 (2d Cir.1967). Thus, the court's inquiry on this Rule 12(b)(6) motion is merely directed to whether plaintiff's allegations constitute a statement of claim under Rule 8(a), which calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

In sum, a complaint should not be dismissed for failure to state a claim unless it appears, beyond doubt, that the plaintiff can prove no set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127 (N.D.N.Y. 1990).

### 1. OBSTRUCTION OF JUSTICE

The third basis for plaintiff's RICO claim is that defendants had obstructed justice. (Pltf.Compl. ¶ 52). Section 1961 of the RICO statute does list 18 U.S.C. § 1503 (obstruction of justice) as one of the predicate acts for a RICO violation. 18 U.S.C. § 1961(1). Further examination, however, reveals the inapplicability of 18 U.S.C. § 1503 to the case at bar.

Section 1503, titled "Influencing or injuring officer or juror generally," states, in relevant part,

> [w]hoever corruptly, or by threat or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer
> . . .

18 U.S.C. § 1503. The language of the statute is a clear indication that the instant complaint does not state a cause of action under the RICO statute predicated on 18 U.S.C. § 1503. The complaint is void of any allegation that the defendant in any way caused any of the acts prohibited by section 1503. Thus, plaintiff's RICO claim for obstruction is hereby dismissed.

### 2. STATE CRIMES AS PREDICATE ACTS UNDER RICO

The plaintiff has also predicated his RICO claim on defendants' alleged violation of state law. (Pltf.Compl. ¶ 51). Plaintiff alleges that the defendants have conspired to injure plaintiff in his business and property in violation of the common law crimes of larceny, extortion, defamation and libel. Of all these claims, only extortion is a viable predicate act under the RICO statute. *See* 18 U.S.C. § 1961(1); *see also O & K Trojan, Inc. v. Municipal & Contractors Equipment Corp.,* 751 F.Supp. 431, 433 (S.D.N.Y.1990)

(section 1961 is an exclusive and exhaustive list of predicate acts under the RICO statutes). Thus, this analysis need only address the issue of extortion. All other predicate acts are dismissed for failure to state a claim under section 1962 of the RICO statute.

New York Penal Law § 155.05 states that "[a] person obtains property by extortion when he compels or induces another person to deliver such property to himself or to a third person by means of instilling in him fear...." N.Y.Penal Law § 155.05 (McKinney 1988). The complaint fails to make of any such allegations, and therefore, the complaint has failed to demonstrate the requisite elements of extortion under New York law. Consequently, the plaintiff has failed to sufficiently allege the predicate act of extortion under the RICO statute in order to survive defendant's motion to dismiss pursuant to Rule 12(b)(6). Thus, the RICO claim predicated on extortion is dismissed.[4]

### C. STATE CLAIMS

■ Plaintiff also bring state causes of action against defendants for misrepresentation and defamation. The Supreme Court has held that pendent jurisdiction is a doctrine of discretion whose "justification lies in considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* Following this reasoning, and noting that all of the federal claims against the defendants have been dismissed, this court similarly dismisses plaintiff's misrepresentation and defamation claims asserted under state law.

4. The defendant also claims that the four year statute of limitation for RICO claims bars the instant suit. While it is true that most acts which were alleged occurred prior to March 3, 1989 (this suit was filed March 3, 1993), the complaint is ample with alleged acts which occurred after that date. *See* Pltf.Compl. ¶¶ 33, 34, 35, 45. Thus, the complaint could not be dismissed on the ground that the statute of limitation had barred the plaintiff's claim.

The court's dismissal of plaintiff's claims pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) renders defendants' motion for summary judgment moot, and thus, the said motion will not be addressed.[5]

### D. SANCTIONS

■ The defendants' have also moved for sanctions pursuant to Fed.R.Civ.P. 11 and the inherent equitable powers of the court. In pertinent part, Rule 11 states:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; *that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 (emphasis added). As stated, Rule 11 imposes an affirmative duty on the signer to make a reasonable inquiry on the viability, legally and factually, of the claims made in the pleading. *Eastway Construction Corp. v. New York*, 762 F.2d 243, 253 (2d Cir.1985). The reasonableness of the inquiry is measured objectively at the time the signer signs the papers in question. *See Derechin v. State University of New York*, 963 F.2d 513, 516 (2d Cir.1992); *United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 (2d Cir.1991). If a district court finds a violation of this rule, imposition of sanctions on the offending party is mandated. *Eastway Construction Corp.*, 762 F.2d at 253–54; *Cavallary v. Lakewood Sky Diving Center*, 623 F.Supp. 242, 246 (S.D.N.Y.1985).

5. It is worth noting that defendants' argument that plaintiff's RICO claim is time barred is flawed. In their motion papers, the defendants have mistakenly asserted that plaintiff has commenced the instant action on or about April 30, 1993. In reality, the present action was commenced on March 3, 1993.

■ It is now well settled that *pro se* status will not shelter a litigant from sanctions. *Cavallary,* 623 F.Supp. at 246. The Advisory Committee's Note to the 1983 Amendment of Rule 11 states that "[a]lthough the standard is the same for unrepresented parties, who are obliged themselves to sign the pleadings, the court has sufficient discretion to take account of the special circumstances that often arise in pro se situations." These special circumstances, however, does not apply to a *pro se* party who in actuality is an attorney. Such a party is more akin to an attorney representing a third party rather than a typical inexperienced *pro se* litigant.

Plaintiff has asked the court to treat his pleadings with some deference due to his *pro se* status. This request is wholly contrary to the reasoning why *pro se* status affords litigants some protection; such parties must be given some deference because of their lack of legal education. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). Plaintiff is an attorney duly admitted to practice law in the State of New York, and thus, must be held to the same objective standard applied to counsel representing a third party. *See Yosef v. Passamaquoddy Tribe,* 876 F.2d 283, 287 (2d Cir.1989). It is in light of these considerations in which we consider defendants' motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

■ In the case at bar, it is clear from the complaint filed that had the plaintiff conducted even a cursory investigation into the laws of RICO prior to filing his complaint, he would have had ample opportunity to realize the inadequacy of his pleading. Plaintiff's attempt to base his RICO claim on predicate acts not listed in 18 U.S.C. § 1961(1)—larceny, defamation and libel—is indication of plaintiff's failure to investigate prior to his filing of the complaint. Furthermore, even when plaintiff based his RICO claim on legitimate predicate acts listed in 18 U.S.C. § 1961(1)—obstruction of justice and extortion—plaintiff failed to realize that these predicate acts require the showing of certain elements which the plaintiff cannot in good faith allege is present in the instant case.

All this coupled with the fact that plaintiff did not submit any opposition papers to defendants' motion for sanctions can lead only to the conclusion that plaintiff failed to investigate the laws as required under Rule 11.

However, not all of the predicate acts for plaintiff's RICO claim suffer from sanctionable infirmities. For example, when resolving all doubts in the signer's favor, plaintiff's RICO claim predicated on mail and wire fraud may very well be valid claims but for plaintiff's failure to plead the said claims with the specificity required under the federal rules. Moreover, because this court has not ruled on a number of plaintiff's state law claims, the court cannot determine whether the inclusion of these claims in the complaint warrants sanctions.

Consequently, the court grants defendants' motion for sanctions an amount equivalent to defendants' cost of defending the claims which this court found was violative of Rule 11. As to those claims not found sanctionable, the motion for sanctions under Rule 11 is denied.

### E. DISMISSAL

■ The defendants have also asked this court to dismiss plaintiff's claims with prejudice. Federal Rules of Civil Procedure 15(a) mandates that "leave [to amend the pleadings] shall be freely given when justice so requires." The Second Circuit has interpreted Rule 15(a) liberally, allowing for amendments unless circumstances exist such as "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Richardson Greenshields Securities, Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987). "If the district court does exercise its discretion to dismiss the complaint with prejudice, 'refusal to grant leave must be based on a valid ground.'" *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 284 (S.D.N.Y. 1990) (quoting *Ronzani v. Sanofi S.A.,* 899 F.2d 195, 198 (2d Cir.1990)).

This court finds no valid reason to wholly dismiss the present complaint with prejudice. As stated earlier, an amendment to the complaint alleging RICO violations predicated on

mail and wire fraud could save the present action if pled with more specificity as required under the federal rules. Thus, there is no indication that an amendment to the complaint would be a futile exercise or that such an amendment would prejudice the defendants in any way. The fact that one of the defendants is a professor of law and also serves as Chairman of the Family Committee to the Advisory Committee of New York State's Law Revision Committee does not change this outcome. Plaintiff's remaining claims, however, dictate a different result. Today's court decision clearly shows that an amendment to the complaint would be of no consequence as to these claims and thus, would be an exercise in futility.

In sum, the complaint is dismissed in its entirety, and it is dismissed without prejudice only as to plaintiff's RICO claim predicated on mail and wire fraud.

## III. CONCLUSION

For the stated reasons, defendants' motion to dismiss pursuant to Rules 9(b) and 12(b)(6) is hereby granted in its entirety. The dismissal is without prejudice only as to plaintiff's RICO claim predicated on mail and wire fraud.[6] Moreover, the court grants defendants' motion for sanctions an amount equivalent to defendants' cost of defending the claims which this court found was violative of Rule 11. As to those claims not found sanctionable, the motion for sanctions under Rule 11 is denied.

**IT IS SO ORDERED.**

---

6. The plaintiff has put forth additional causes of action in his memorandum of law in opposition to defendants' motion to dismiss. This is wholly inappropriate and such causes of action was not addressed in this order.