**OLD REPUBLIC INSURANCE COMPANY, Plaintiff,**

v.

**HANSA WORLD CARGO SERVICE, INC.; Duferco Ltd. (U.S.A.); Ferco Intertrade, Inc.; Duferco, Inc.; Duferco Steel, Inc; Duferco Trading Corp.; Duferco Steel Sales, Ltd.; Frank Fink; John Cummings; and John Doe 1 through 100, inclusive, Defendants.**

No. 92 Civ. 0119 (DNE).

United States District Court,
S.D. New York.

Feb. 26, 1997.

---

Lynch Rowin Burnbaum & Crystal, New York City (Thomas P. Lynch, of counsel), and Glad & Ferguson, San Francisco, CA (T. Randolph Ferguson, of counsel), for plaintiff.

Camhy Karlinsky & Stein, New York City (Robert P. Stein, of counsel), for defendants Duferco Ltd. (USA), Duferco Steel, Inc., Duferco Trading Corp., and Duferco Steel Sales, Ltd.

## Opinion & Order

EDELSTEIN, District Judge:

Presently before this Court are the following two motions brought by defendants Duferco Ltd. (USA) ("Duferco USA"), Duferco Steel, Inc. ("Duferco Steel"), Duferco Trading Corp. ("Duferco Trading"), and Duferco Steel Sales, Ltd. ("Duferco Steel Sales"): (1) a motion to dismiss plaintiff Old Republic Insurance Co.'s ("ORIC" or "plaintiff") Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6); and (2) a motion to impose sanctions against plaintiff pursuant to Rule 11. For the following reasons, defendants' motion to dismiss is granted in part, and their motion for sanctions is denied.

## BACKGROUND

■ As a preliminary matter, this Court notes that both parties have submitted information outside the pleadings regarding the instant Rule 12(b)(6) motion. Rule 12(b)(6), however, forbids a court's reliance upon matters outside the complaint unless the court converts the motion to dismiss into a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b). Moreover, the Second Circuit has instructed district courts to make a choice when they are presented with material outside of the pleadings in the context of a Rule 12(b)(6) motion to dismiss. *See Kopec v. Coughlin,* 922 F.2d 152, 155–56 (2d Cir. 1991). In such situations, "the district court must either [ (1) ] disregard such material or [ (2) ] give the parties notice that the motion is being converted into one for summary

judgment and permit the parties to submit evidence accordingly." *Id.; see also Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). In the instant case, this Court elects the first option, largely because the parties have undertaken no discovery and their arguments are framed in terms of Rule 12(b)(6). Accordingly, the allegations recited herein are drawn solely from the Complaint, and all affidavits and other materials are disregarded.

Plaintiff ORIC "is a corporation organized under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the Commonwealth of Pennsylvania[,] and is licensed to transact business within the State of New York." (Complaint, *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 92 Civ. 0199, ¶ 1 (Jan. 6, 1992).) "The Secretary of the Treasury of the United States has authorized [ORIC] to issue United States Customs surety bonds." *Id.* Defendant Hansa World Cargo Service, Inc. is incorporated in Michigan, and, during the period relevant to the instant litigation, maintained its principal place of business in Ohio. *Id.* ¶ 2.

Until 1982, defendant Ferco Intertrade, Inc. ("Ferco") was a Delaware corporation authorized to do business in New York. *Id.* ¶ 4. Plaintiff contends that on July 15, 1982, Ferco became known as defendant Duferco USA. *Id.* ¶ 4. Duferco USA also was a Delaware corporation authorized to do business in New York. *Id.* ¶ 3. Plaintiff alleges, however, that in November 1989 Duferco USA filed a Certificate of Termination with the New York Secretary of State, "but continued thereafter and continue[d] [as of the filing of the Complaint] to do business under the name of Duferco Ltd. (USA) in the County of New York, State of New York." *Id.*

Defendants Duferco, Inc., Duferco Steel, Duferco Properties, Inc., Duferco Trading, and Duferco Steel Sales all were Delaware corporations, with their respective principal places of business in New York. *Id.* ¶¶ 5–9. Plaintiff alleges that "prior to April 22, 1988, defendant Duferco Trading Corp. was known as Duferco Properties, Inc." *Id.* ¶ 8. Defen-

dant Frank Fink ("Fink") is alleged to be "an individual who [wa]s a citizen of the State of Ohio," who at all times relevant to this litigation was a "licensed Customhouse Broker," and "an owner and operator of defendant Hansa." *Id.* ¶ 11. Plaintiff contends that Fink, "in his capacity as a licensed Customhouse Broker, had authority to issue plaintiff's bonds for the benefit of his customers." *Id.* Defendant John Cummings ("Cummings") is alleged to be "an individual who [wa]s a citizen of the State of California," who worked as "an attorney versed in custom matters [and] who acted as an officer of defendant Hansa during [the time relevant to this litigation]." *Id.* ¶ 12.

Plaintiff contends that "each defendant was the agent or joint venturer of each other defendant, and in doing the things [alleged in the Complaint], was acting within the course and scope of such agency or joint venture and with the permission and consent of its co-defendants." *Id.* ¶ 13. In addition, plaintiff asserts that "each of the Duferco defendants which presently exists is an alter ego and/or successor corporation to those Duferco defendants that have been dissolved or terminated." *Id.* ¶ 14. Finally, because "[p]laintiff is ignorant of the true names and capacities of defendants sued herein as John Does 1 through 100, inclusive, [plaintiff] therefore sues these defendants by such fictitious names," and states that plaintiff "will amend this [C]omplaint to allege their true names and capacities when ascertained." *Id.* ¶ 15. Plaintiff, however, has not amended its Complaint.

This action concerns an alleged scheme to import steel products into the United States from Brazil without the payment of "countervailing" and "antidumping" duties which the United States Customs Service ("U.S. Customs" or the "Customs Service") levied upon the steel. Countervailing duties are amounts assessed by the Customs Service based upon a determination by the United States Commerce Department (the "Commerce Department") that, "as a result of bounties, subsidies or grants bestowed upon the foreign exporter of the goods by the government of the country of exportation, the imported goods enjoy an unfair overall price advantage

in the United States marketplace." *Id.* ¶ 23. Similarly, antidumping duties are amounts assessed by U.S. Customs based upon a determination by the Commerce Department that "goods are being sold for export to the United States at prices which are less than the cost at which they are sold in the country of origin." *Id.* ¶ 22.

Plaintiff maintains that Fink, as a licensed Customhouse broker, "established a relationship with certain individuals pursuant to which he obtained and was authorized to post pre-executed surety bonds from certain surety companies with U.S. Customs for the benefit of his customers." *Id.* ¶ 20. In "late 1980 or early 1981" Fink was authorized to post ORIC's U.S. Customs surety bonds. *Id.* Plaintiff contends that in 1981 "defendants entered into a conspiracy to use defendant Fink's position [of] trust with [ORIC] in an effort to avoid payment of antidumping and countervailing duties to U.S. Customs and leave [ORIC] to pay such duties, up to the maximum amount of its [U.S. Customs] surety bonds." *Id.* ¶ 21.

Plaintiff alleges that when the steel at issue in this action was imported from Brazil, "[a]t the time of making entry . . . the [steel] w[as] subject to ongoing and published antidumping and/or countervailing duty investigations, designated by the Department of Commerce as Antidumping Duties Case Nos. A–351–012 and A–351–014 and Countervailing Duty Case No. C–351–021." *Id.* ¶ 24. Plaintiff further contends that "all of the defendants were aware of the existence of the investigations and of the fact that antidumping and/or countervailing duties were likely to be assessed on the goods they were importing under the bonds posted by defendant Fink." *Id.*

According to ORIC, Fink "knew that it was [ORIC's] customary practice to require the posting of collateral to secure antidumping and/or countervailing duty bonds." *Id.* ¶ 25. Moreover, ORIC maintains that "defendants also knew that the usual custom and practice of U.S. Customs was to seek recovery of antidumping and countervailing duties only from the 'importer of record,' even if other persons or entities were actually re-

sponsible for the purchase and/or importation of the goods." *Id.*

In light of this alleged knowledge, plaintiff asserts that defendants conspired and agreed that [defendant] Hansa would act as "importer of record" for the Brazilian steel. *Id.* ¶ 26. Plaintiff maintains that by listing Hansa as "importer of record" defendants intended: (1) to use defendant Fink's position of trust to delay and forestall [ORIC] from demanding the collateral which it customarily required in order to secure the obligations it was undertaking in connection with its antidumping and countervailing duty bonds; (2) to facilitate defendants' efforts to avoid providing the collateral [ORIC] required on antidumping and countervailing duty bonds; and (3) to insulate the actual importers from actions by U.S. Customs for antidumping duties and countervailing duties and penalties for fraud, "thereby increasing the likelihood that [ORIC] would be forced to pay claims to [U.S.] Customs under its bonds." *Id.*

Plaintiff contends that "[i]n each of the bonds in issue, defendants, through defendant Hansa, represented to [ORIC] and to U.S. Customs that they would pay all duties assessed upon the goods they imported, including any antidumping and/or countervailing duties" levied as a result of the above-described investigations. *Id.* ¶ 27. Furthermore, plaintiff contends that Fink, "for himself and for the other defendants," represented that "he had obtained or would obtain collateral sufficient to secure all obligations which might be incurred under [ORIC's] antidumping and countervailing duty bonds." *Id.* ¶ 29. Plaintiff alleges that these representations were false. *Id.* ¶¶ 28, 30.

Plaintiff claims that in March 1983, ORIC's "agents advised defendant Fink that he could no longer post [ORIC's] bonds in Hansa's name unless Hansa held an interest in the goods being imported.... [and that Fink] could no longer post [ORIC's] antidumping and countervailing duty bonds unless they were fully collateralized for the face amount of the bond." *Id.* ¶ 31. Despite these instructions, plaintiff asserts that Fink "posted at least forty-five bonds for the benefit of the other defendants without obtaining collateral

[and that] Hansa was named as the importer of record in each bond despite the fact that it owned no interest in the imported goods." *Id.* ¶ 32.

"By posting [ORIC's] pre-executed bonds with U.S. Customs," plaintiff claims that, "defendant Fink created a binding obligation on the part of [ORIC] to pay duties and taxes found to be due on the imported steel ... including antidumping and/or countervailing duties ... in the event that the importer did not pay those duties." *Id.* ¶ 33. ORIC maintains that although Fink's posting of its pre-executed bonds created a binding obligation owing from ORIC to U.S. Customs, ORIC "was not obligated to pay anything under its bonds until after (a) the entries were liquidated' with increases in the amount owed from duties, (b) demands were made upon the actual importer, (c) the importer failed to pay the duties demanded, and (d) [U.S.] Customs asserted a valid demand on [ORIC] under its bond." *Id.* ¶ 34. Because ORIC's liability under its surety bonds was contingent upon these events, ORIC "did not incur any recoverable damages under the bonds for several years after the bonds were posted with [U.S.] Customs." *Id.* ¶ 35.

In approximately February 1984, the Department of Commerce made a preliminary determination that antidumping and countervailing duties should be assessed on steel imported by defendants. *Id.* "As a result of administrative review proceedings initiated by the foreign manufacturers involved, however, the Department [of Commerce] did not issue an order requiring U.S. customs to 'liquidate' [ORIC's bonds] with an assessment of countervailing duties until June 1987." *Id.* Following these administrative proceedings, "the foreign manufacturers initiated a lawsuit before the Court of International Trade and obtained an injunction against enforcement of the Department of Commerce Order." *Id.* The Court of International Trade, however, upheld the Commerce Department's determination. *Id.* Upon completion of these administrative and judicial proceedings, "U.S. Customs liquidated the [bonds] involved in Countervailing Duty Case No. C–351–021 ... at various times between June 1989 and September

1989." *Id.* ¶ 36. U.S. Customs also liquidated the bonds "involved in Antidumping Duties Cases Nos. A–351–021 and A–351–014 . . . at various times during the period between February 1988 and October 1988." *Id.*

Following these actions, U.S. Customs "sent a bill for increased duties to defendants by addressing the bill to Hansa." *Id.* ¶ 37. Plaintiff contends that "upon defendants' failure and refusal to pay the additional duties billed to them, [U.S.] Customs made demand for payment upon [ORIC]. . . ." *Id.* ¶ 38. Plaintiff asserts that, despite its protests to U.S. Customs that it was not obligated to pay certain of these duties, "[a]s of the date this Complaint [wa]s prepared, [ORIC] has paid an aggregate sum of $4,412,805.83 in liquidated antidumping and/or countervailing duties" as a result of defendants' Brazilian steel importation. *Id.* ¶ 39. Moreover, plaintiff maintains that "U.S. Customs claims that [ORIC] still owes hundreds of thousands of dollars for increased duties assessed" on defendants' steel. *Id.*

On January 8, 1992, ORIC commenced the instant litigation. In its Complaint, plaintiff asserts ten "claims for relief" against defendants: (1) "reimbursement" of the $4,412,-805.83 plus interest which ORIC paid to U.S. Customs on defendants' behalf; (2) "indebtedness" of $4,412,805.83 plus interest; (3) "indemnity" of $4,412,805.83; (4) "unjust enrichment" of $4,412,805.83 plus interest; (5) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") in the execution of defendants' scheme; (6) conspiracy to violate RICO; (7) "intentional misrepresentation" on the grounds that defendants knowingly and falsely represented to ORIC that they would pay any duties assessed on the steel and that they had provided collateral for ORIC's bonds; (8) breach of fiduciary duty against Fink; (9) "injunction" forcing defendants to pay "the amounts demanded by U.S. Customs"; and (10) "declaratory relief" for a judicial determination of "the parties' respective rights and duties with respect to payment of the claims asserted by U.S. Customs." *Id.* ¶¶ 40–87.

On July 24, 1992, defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6) and for sanctions pursuant to Rule 11. (Memorandum of Law of Defendants Duferco Ltd. (U.S.A.), Duferco Steel, Inc., Duferco Trading Corp., and Duferco Steel Sales, Ltd. in Support of Motion to Dismiss the Complaint and for the Imposition of Sanctions, *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 92 Civ. 0119 ("Dfts.Memo") at 42 (July 24, 1992).) On September 22, 1992, ORIC submitted papers opposing defendants' motions. (Plaintiff's Memorandum of Law in Opposition to the Duferco Defendants' Motion to Dismiss and for Sanctions, *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 92 Civ. 0119 ("Pltf. Opp. Memo") at 37 (Sept. 18, 1992).) On October 15, 1992, defendants submitted their reply brief in support of their motion. (Reply Memorandum of Law of Defendants Duferco Ltd. (U.S.A.), Duferco Steel, Inc., Duferco Trading Corp., and Duferco Steel Sales, Ltd. in Support of Motion to Dismiss the Complaint and for the Imposition of Sanctions, *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 92 Civ. 0119 ("Dfts. Reply Memo") at 42 (Oct. 15, 1992).)

On November 5, 1992, ORIC submitted "supplemental" papers in further opposition to defendants' motions. (Plaintiff's Supplemental Memorandum of Law in Opposition to Motion to Dismiss of Defendant John Cummings and In Further Opposition to Motion to Dismiss of the Duferco Defendants, *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 92 Civ. 0119 at 20 (Nov. 4, 1992).) By letter dated November 9, 1992, defendants "strenuously object[ed] to the belated submission by [ORIC] and its counsel, without court permission to make a further submission to th[is] Court of 'supplementary materials' nearly three weeks after the agreed-upon return date of the motion to dismiss." (Letter from Robert P. Stein, Esq., to the Honorable David N. Edelstein, United States District Judge for the Southern District of New York, (Nov. 9, 1992).) Because supplemental submissions are not authorized by the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, or this Court's Individual Rules, and because this Court did not grant ORIC permission to supplement its opposition papers, this Court

will not consider ORIC's supplemental papers in resolving the instant motions.

## DISCUSSION

This Court will consider defendants' motions to dismiss and for sanctions individually.

### I. Defendants' Motion to Dismiss

Defendants base their motion to dismiss upon Rule 12(b)(6). Before considering the merits of their motion, this Court will set forth the standard controlling the resolution of a motion based on this rule.

### A. Rule 12(b)(6) Standard

In reviewing the pleadings on a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein. *See* Fed.R.Civ.P. 12(b)(6); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991); *Ryder Energy Dist. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984). A "court may not consider any material other than the pleadings in determining a motion under [Rule 12(b)(6) ] unless it converts the motion into a motion for summary judgment under Rule 56. However, material which is submitted as part of the complaint, as well as certain items in the record and public record, may be considered by the court." 2A James Wm. Moore, Moore's Federal Practice, ¶ 12.07[2.–5], at 12–89 (2d ed.1995); *see also Kopec*, 922 F.2d at 155–56; *Fonte*, 848 F.2d at 25.

As the Second Circuit has stated, the court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *see Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Moreover, in evaluating whether a complaint will withstand a Rule 12(b)(6) motion, a court must assume the truth of plaintiff's "well-pleaded allegations." *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 810, 127 L.Ed.2d 114 (1994) (Rehnquist, C.J.); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). The court also must read the complaint generously, and draw reasonable inferences in favor of the pleader. *See LaBounty*, 933 F.2d at 123. A complaint will not be dismissed unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to the relief requested. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991).

Where a complaint is dismissed for failing to state a claim upon which relief can be granted under Rule 12(b)(6), it is "the usual practice" to allow leave to replead. *Cortec Indus.*, 949 F.2d at 48; *see also Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir.1990); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987). "Although leave to replead is within the discretion of the district court, refusal to grant it without any justifying reason is an abuse of discretion." *Cortec Indus.*, 949 F.2d at 48; *Ronzani*, 899 F.2d at 198. Such a justifying reason exists, for example, where a plaintiff is "unable to allege any fact sufficient to support its claim," *Cortec Indus.*, 949 F.2d at 48; *Spain v. Ball*, 928 F.2d 61, 62–63 (2d Cir.1991), or where "the amendment[ ] would not serve any purpose." *Kaster v. Modification Sys., Inc.*, 731 F.2d 1014, 1018 (2d Cir.1984). If a plaintiff has "at least colorable grounds for relief, justice does ... require leave to amend." *Id.* (quotation omitted). Where no justifying reason or colorable ground for relief exists, however, dismissal with prejudice is warranted. *Cortec Indus*, 949 F.2d at 48.

### B. The Merits of Defendant's Motion to Dismiss

Defendants' arguments in support of their motion to dismiss fall into six categories:. (1) they lack the capacity to be sued; (2) plaintiff's fraud claims fail to meet the requirements of Rule 9(b); (3) plaintiff's RICO claims are legally insufficient; (4) plaintiff fails to state a claim for "reimbursement," "indebtedness," "indemnity," or "unjust enrichment"; (5) plaintiff's request for injunctive relief is insufficient; and (6) plaintiff's request for declaratory relief must be denied. This Court will address each of defendants' arguments in turn.

### 1. The Capacity of Defendants Duferco USA, Duferco Steel & Duferco Trading to Litigate this Action

Three of the four moving defendants— Duferco USA, Duferco Steel, Duferco Trading, but not Duferco Steel Sales—each contend that they lack the capacity to litigate this action. (Dfts. Memo at 9–10.) Duferco USA maintains that it was a Delaware corporation which was dissolved on June 17, 1988. *Id.* at 9. In support of this assertion, defendants submit an affidavit. *Id.* According to defendants, pursuant to Section 278 of the Delaware Corporation Law, "a Delaware corporation continues to exist for three years after its dissolution, and any action against such an entity must be brought within three (3) years of such dissolution." *Id.* Because defendants further contend that under Federal Rule of Civil Procedure ("Rule") 17(b), "the capacity of a corporation to sue or be sued is determined by the law of the state under which it is organized," *id.* at 9 n. *, they argue that the instant litigation is time barred against Duferco USA because ORIC did not commence it until January 8, 1992. *Id.* at 9–10.

In addition, Duferco Steel and Duferco Trading (which defendants claim are now known as Duferco Energy Group), each contend that neither of them "had any corporate existence until June 2, 1986, and August 6, 1986, respectively." *Id.* at 10. Defendants again rely upon an affidavit to support this claim. *Id.* These defendants then point out that the events underlying ORIC's Complaint "occurred in 1983 and 1984, with a single transaction perhaps occurring in January 1985." *Id.* (emphasis omitted). Accordingly, defendants argue that, because all of these events occurred prior to Duferco Trading or Duferco Steel's existence, these defendants cannot be held liable for them. *Id.*

In opposition, ORIC contends that it is improper for a district court to "consider documents submitted by defendants in support of [a] motion [to dismiss for failure to state a claim upon which relief can be granted] unless it convert[s] the motion into one for summary judgment and g[ives] plaintiff the opportunity to submit affidavits or other materials permitted by the summary judgment rule." (Pltf. Opp. Memo at 9.) ORIC then asserts that Duferco USA, Duferco Steel and Duferco Trading's motion to dismiss "is based entirely upon facts which are set forth in the [defendants'] [a]ffidavit, not in [ORIC's] Complaint." *Id.* at 10. ORIC points out that, while the affidavit states that Duferco USA was dissolved three years prior to the commencement of this litigation, it does not contain a copy of Duferco USA's certificate of dissolution. *Id.* at 11 n. 1. In addition, ORIC claims that defendants' argument that Duferco USA was the only entity involved in the events underlying this action are "nowhere in the [C]omplaint" because the Complaint alleges that "all of the Duferco entities" were "alter egos or successors to 'Duferco Ltd. (U.S.A.).'" *Id.* at 10–11. ORIC further maintains that Duferco Steel and Duferco Trading's assertion that they did not exist during the relevant time period are based solely upon an affidavit. Finally, ORIC argues that it would be unfair for this Court to transform the instant motion to one for summary judgment in order to consider these documents outside the Complaint because ORIC has undertaken no discovery in this case. *Id.* at 11–12.

In reply to ORIC's opposition, defendants argue, *inter alia*, that, "[a]lthough [ORIC] and the Duferco defendants each rely upon matters outside of the [C]omplaint, a court may take judicial notice of matters of public record, such as those pertaining to the formation and dissolution of corporate entities, without the necessity of converting a motion

to dismiss into one for summary judgment." (Dfts. Reply Memo at 10.)

■ Under Rule 17(b), "[t]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed.R.Civ.P. 17(b). Similarly, the capacity of a dissolved corporation is controlled by the law of the state in which it was incorporated. *See Deerfield Specialty Papers v. Black Clawson Co.*, 751 F.Supp. 1578, 1581 (S.D.N.Y.1990). In the case at bar, it is undisputed that Duferco USA was a Delaware corporation, (Complaint ¶ 4); (Dfts. Memo at 9), so the law of Delaware governs that entity's capacity to sue or be sued.

■ At common law, "the dissolution of a corporation ended its existence, thus abating all pending actions against it and terminating its capacity thereafter to sue or be sued." *In re Citadel Indus., Inc.*, 423 A.2d 500, 503 (Del.Ch.1980). Accordingly, "statutory authority is necessary to prolong the life of a corporation past its date of dissolution." *Id.* (citing *Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 47 S.Ct. 391, 71 L.Ed. 634 (1927)). In Delaware, Title 8, Delaware Code Annotated, Section 278 ("Section 278") provides that authority. *Id.* Section 278 in relevant part provides:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of *3 years* from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them. . . .

Del.Code. Ann. tit. 8, § 278 (1991) (emphasis added). This statutory provision keeps a dissolved Delaware corporation alive for three years for purposes of litigation. *Frederic G. Krapf & Son v. Gorson*, 243 A.2d 713, 715 (Del.Super.Ct.1968).

■ The instant litigation was commenced on January 8, 1992, and Duferco USA claims that it was dissolved on June 17, 1988. Duferco USA, however, has submitted nothing as proof of its dissolution other than an assertion in an affidavit. This Court reit-

erates that on a motion to dismiss under Rule 12(b)(6), a court is not to consider documents outside the pleadings. Fed.R.Civ.P. 12(b)(6). While a court may, as defendants argue, take judicial notice of certain matters in considering a Rule 12(b)(6) motion, *see Morelli v. Cedel*, No. 96 Civ. 2874, 1997 WL 61499, at *8 n. 5 (S.D.N.Y. Feb.13, 1997); *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993), this Court finds it inappropriate to do so in this instance.

In support of this Court's taking judicial notice of its dissolution, Duferco USA cites two opinions: *Mack v. South Bay Beer Distrib., Inc.*, 798 F.2d 1279 (9th Cir.1986), and *Phillips v. Bureau of Prisons*, 591 F.2d 966 (D.C.Cir.1979). This Court first observes that neither of these cases was decided by the Second Circuit and that, accordingly, neither binds this Court. Moreover, even if those cases were binding upon this Court, they each are factually distinct from the case at bar, and thus would not constrain this Court to exercise its power to judicially notice facts not in plaintiff's Complaint. In both *Mack* and *Phillips*, the courts judicially noticed public records which were submitted to them by litigants. *Mack*, 798 F.2d at 1282 (judicially noticing records from administrative proceedings submitted as exhibits); *Phillips*, 591 F.2d at 969 (judicially noticing a letter from defendant, the text of which was "prominently" incorporated in complaint) (footnote omitted). In the instant case, Duferco USA has not submitted any public record to this Court which establishes its dissolution three years prior to the institution of this litigation. Instead, Duferco offers this Court an affidavit, the accuracy of which this Court cannot judicially notice because Duferco USA has supplied this Court with no verifiable information. *See* Fed.R.Evid. 201(d) ("[a] court shall take judicial notice [of adjudicative facts] if requested by a party *and supplied with the necessary information*") (emphasis added). Until supplied with the necessary information, this Court finds it improper to judicially notice the date of Duferco USA's dissolution for purposes of finding the Duferco USA lacks the capacity to be sued under Section 278.

■ Similarly, this Court finds it improper to find that defendants Duferco Steel and Duferco Trading lack the capacity to be sued. To reiterate, those defendants argue that they are incapable of being sued because they did not exist until after the transactions underlying this litigation had occurred. (Dfts. Memo at 10.) Again, however, this Court is offered nothing but an affidavit as proof of this assertion. Reliance upon affidavits is improper in considering a Rule 12(b)(6) motion. Fed.R.Civ.P. 12(b)(6). Moreover, because it has not been supplied with the necessary information, this Court again finds it inappropriate to take judicial notice of a fact stated only in an affidavit. As a result, this Court finds that Duferco USA, Duferco Steel and Duferco Trading's arguments in favor of their motion to dismiss because they lack the capacity to be sued must fail.

## 2. The Sufficiency of ORIC's Fraud Pleadings

ORIC's Complaint sets forth three claims based upon fraud—its fifth and sixth claims for relief state RICO claims predicated upon alleged mail and wire fraud offenses, and its seventh claim for relief is for intentional misrepresentation. *See* (Complaint ¶¶ 56–73.) Defendants argue that ORIC's fraud claims fail to meet the heightened pleading requirements of Rule 9(b). (Dfts. Memo at 11–17.) First, Duferco Steel and Duferco Trading assert that "[t]he sole basis for [ORIC's] claims of fraud against ... [them] is the single conclusory allegation that each of the Duferco defendants which presently exists is an alter-ego and/or successor corporation to those Duferco defendants that have been dissolved or terminated." *Id.* at 11 (citing (Complaint ¶ 14)). This statement is insufficient, they contend, because the Complaint is "devoid of any factual allegations which set forth with particularity the basis upon which [Duferco Steel or Duferco Trading] is or could be the alter-ego of[,] or successor to[,] any of the other Duferco defendants." *Id.* at 11–12. Defendants further contend that ORIC's alter-ego pleading should be rejected even under the more liberal requirements of Rule 8(a). *Id.* at 12. Second, defendants contend that each of ORIC's fraud claims

"fails to meet the requirements of Rule 9(b) ... by asserting undifferentiated allegations against the seven Duferco defendants as if they were one aggregate entity." *Id.* at 13. Third, defendants claim that the Complaint "also violates Rule 9(b) because the bulk of plaintiff's fraud allegations are impermissibly asserted 'upon information and belief.'" *Id.* at 16. In its opposition submissions, ORIC curiously does not address any of these arguments. *See generally* (Pltf. Opp. Memo.)

Rule 8(a) provides in pertinent part: "A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief...." Fed.R.Civ.P. 8(a)(2). To comply with the Rule, "[a]ll that is necessary is that the claim for relief be stated with brevity, conciseness, and clarity." 5 Charles A. Wright, *et al.*, Federal Practice & Procedure, § 1215, at 136–37 (2d ed.1990). Moreover, "[p]leadings are to be construed liberally in accordance with the mandate in Rule 8(f)." *Id.* § 1215, at 145; *see* Fed.R.Civ.P. 8(f) ("[a]ll pleadings shall be so construed so as to do substantial justice"). Despite such leniency, however, "it is clear that in order to satisfy the requirements of Rule 8(a)[,] the pleading must contain something more by way of a claim than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a right of action." 5 Federal Practice & Procedure § 1215, at 163. Where a defendant brings a motion to dismiss for failure to state a claim upon which relief can be granted in such instances, it is appropriate to dismiss the Complaint without prejudice, or to grant plaintiff leave to file an amended complaint. *Id.* at 162.

■ By contrast, Rule 9(b) sets forth a more stringent standard for claims based on fraud. That rule provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). Rule 9(b) imposes upon a plaintiff a heightened level of pleading in order to provide a defendant with fair notice of a plaintiff's claim. *See O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). To achieve that objective, a complaint must: (1) specify those statements that the plaintiff claims were fraudulent; (2) identify the speaker; (3) specify where and when the statements were made; and (4) explain why the statements were fraudulent in nature. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993); *see also Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir.1995). Moreover, "where there are multiple defendants, the plaintiff must meet this burden as to each defendant." *Noble v. Great Brands of Europe, Inc.,* 949 F.Supp. 183, 186 (S.D.N.Y.1996); *see also DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987) ("[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud").

Finally, "Rule 9(b) is not satisfied by allegations of fraud or mistake based on information and belief." 2A Moore's Federal Practice, ¶ 9.03[1], at 9–27. Nevertheless, "allegations may be based upon information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner,* 902 F.2d at 172 (citing *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 999 n. 1 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988)). "This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations. Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* When a court determines that a plaintiff has failed to comply with Rule 9(b), the pleader is generally allowed to amend the pleading, and failure to permit amendment has been held to be abuse of discretion. *See Devaney,* 813 F.2d at 569, 2A Moore's Federal Practice, ¶ 9.03[5], at 9–58.

To reiterate, defendants make three arguments concerning the inadequacy of ORIC's Complaint: (1) that ORIC's alter ego and successor liability allegations are deficient under Rule 9(b) as well as under Rule 8(a); (2) that ORIC's fraud claims fail under Rule 9(b) because the Complaint does not differentiate among defendants' roles in the alleged fraud; and (3) ORIC impermissibly pleads its fraud and RICO claims upon information and belief. This Court will consider each of defendants' arguments individually.

### a. The Sufficiency of ORIC's Alter Ego and Successor Liability Claims

This Court will consider defendants' arguments that ORIC did not adequately plead its alter ego or successor liability claims separately.

#### i. Alter Ego

This Court begins by noting that the issue of whether a complaint which seeks to pierce the corporate veil is subject to Rule 9(b) is a "knotty question." *Farley v. Davis,* No. 91 Civ. 5530, 1992 WL 110753, at *6 (S.D.N.Y. May 8, 1992) (Leisure, J.). Several courts in this district have differed on this issue. *Compare Citicorp Int'l Trading Co. v. Western Oil & Refining Co.,* 771 F.Supp. 600, 608 (S.D.N.Y.1991) (reviewing alter ego allegations under Rule 8(a)); *Builders Fed. (Hong Kong) Ltd. v. Turner Constr.,* 655 F.Supp. 1400, 1406 (S.D.N.Y.1987) (refusing to dismiss alter ego claims despite plaintiff's failure to comply with Rule 9(b)); *with Soviet Pan Am Travel Effort v. Travel Comm., Inc.,* 756 F.Supp. 126, 132 (S.D.N.Y.1991) (dismissing alter ego claim under Maryland corporate law for failure to comply with Rule 9(b)).

This Court, however, finds Judge Mukasey's resolution of this issue in *Rolls–Royce Motor Cars, Inc. v. Schudroff,* 929 F.Supp. 117 (S.D.N.Y.1996), to be particularly compelling. In resolving this question under New York corporations law, Judge Mukasey first noted that "New York courts will disregard the corporate veil ... *either* when there is fraud *or* when the corporation has been used as an alter ego." *Id.* at 121 (quotation omitted) (emphasis in original). To establish that one entity is the alter ego of its parent under New York law, a plaintiff must prove "(1) that the parent exercised such complete domination in respect to the trans-

action attacked that the subsidiary had at that time no separate will of its own, and (2) that this domination was used to commit fraud or wrong against plaintiff." *Id.* at 122 (citation omitted). A claimant thus can pierce a corporate veil by pleading "some non-fraudulent 'wrong' attributable to the defendant's complete domination of a subsidiary entity." *Id.* Accordingly, "because a veil piercing claimant can prevail without proving fraud," Judge Mukasey determined that, "alter ego allegations will not be held to the particularity requirements of [Rule] 9(b)[,] ... [but rather to] the liberal 'notice pleading' standard of [Rule] 8(a), which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quotations omitted) (listing cases).

In the case at bar, this Court first observes that this litigation arises under this Court's diversity jurisdiction, and therefore, this Court must apply to it the substantive law of the forum state—New York. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). For the same reasons as stated by Judge Mukasey—to wit, that an alter ego claim in New York need not be based upon fraud—this Court finds that Rule 8(a), not Rule 9(b), controls the sufficiency of ORIC's pleading to pierce the corporate veil under New York corporations law. Even under the liberal "notice" pleading requirements of Rule 8(a), however, this Court finds that ORIC's alter ego pleading is inadequate.

■■■ To reiterate, in order to properly plead an alter-ego theory under New York law, a plaintiff must establish two elements: (1) complete control and domination by the parent company; and (2) that this domination was used to perpetrate a fraud or wrong upon the plaintiff. *See Rolls–Royce,* 929 F.Supp. at 122; *Zinaman v. USTS New York, Inc.,* 798 F.Supp. 128, 132 (S.D.N.Y. 1992). Here, however, the sole mention of the alter ego theory in ORIC's Complaint is the following:

> Upon information and belief, each of the Duferco defendants which presently exists is an *alter ego* and/or successor corporation to those Duferco defendants that have been dissolved or terminated.

(Complaint ¶ 14 (emphasis added).) Nowhere in its Complaint does ORIC even allege which of the numerous Duferco defendants named in the Complaint is the "parent" company. As a result, this Court is left entirely in the dark with respect to which company's veil ORIC seeks to pierce. Likewise, ORIC does not allege which Duferco entity allegedly controlled or dominated the others. Moreover, while ORIC alleges that a great many wrongs were committed by defendants, ORIC utterly fails to allege that these wrongs were the result of one Duferco entity's control or domination of the others. ORIC merely asserts that an undifferentiated group of "defendants" conspired to defraud ORIC. *See, e.g.,* (Complaint ¶¶ 21–22 25–26.) These allegations are insufficient to establish an alter-ego claim in New York, even under Rule 8(a). As a result, this Court finds that ORIC has failed to state a claim based on an alter ego theory. Thus, to the extent that ORIC alleges fraud claims against one or more parent companies through their subsidiaries by employing an alter ego theory (which cannot be discerned from the Complaint), this Court finds that defendants' motion to dismiss should be granted with respect to ORIC's fraud claims. Accordingly, this Court finds that all of ORIC's claims in its fifth, sixth and seventh claims for relief against the Duferco defendants based upon an alter ego theory should be dismissed for failure to state a claim upon which relief can be granted. When a court grants a motion to dismiss for failure to state a claim upon which relief can be granted on Rule 8(a) grounds, however the court should grant plaintiff leave to replead. 5 Federal Practice & Procedure, § 1215, at 162. Accordingly, this Court finds that ORIC should be granted thirty days' leave, computed from the date of filing of this Opinion and Order, to replead its alter ego theory with respect to its fraud claims in a manner consistent with the instant Opinion and Order.

### ii. Successor Liability

■■■ Similarly, to the extent that ORIC seeks to sue Duferco entities which no longer existed at the time ORIC filed its

Complaint under a theory of "successor liability," this Court finds that those claims also must fail. "In general, successor liability will lie when: (1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction [conveying the assets of one company to the other] was fraudulent; (3) there was a *de facto* merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company." *American Buying Ins. Serv. v. S. Kornreich & Sons, Inc.,* 944 F.Supp. 240, 249 (S.D.N.Y. 1996); *see also Freeman v. Complex Computing Co.,* 931 F.Supp. 1115, 1121–23 (S.D.N.Y.1996). Like the pleading of alter ego claims under New York law, *see Rolls-Royce,* 929 F.Supp. at 121–22, a complaint alleging successor liability need not contain allegations of fraud. Accordingly, pleadings of successor liability are subject to the lenient pleading requirements of Rule 8(a), not the more rigorous standards of Rule 9(b).

■ In the case at bar, however, ORIC fails to allege any of these four types of successor liability. As previously noted, ORIC simply states that "[u]pon information and belief, each of the Duferco defendants which presently exists is an alter ego and/or *successor corporation* to those Duferco defendants that have been dissolved or terminated." (Complaint ¶ 14 (emphasis added).) ORIC makes no attempt to demonstrate that any Duferco defendant is, in fact, a successor corporation to a previously existing Duferco entity. Simply pleading such a legal conclusion is insufficient to stave off dismissal, even under Rule 8(a). 2A Moore's Federal Practice, ¶ 12.07[2.05], at 12–84. Thus, to the extent that ORIC's fifth, sixth, and seventh claims for relief allege fraud claims against Duferco entities which no longer existed at the time the Complaint was filed by utilizing successor liability theory, this Court finds that ORIC's claims should be dismissed for failure to state a claim upon which relief can be granted. As with this Court's finding with respect to ORIC's alter ego pleading, where a court grants a motion to dismiss for failure to state a claim upon which relief can be granted on Rule 8(a) grounds, a court should grant plaintiff leave to replead. 5 Federal Practice & Procedure, § 1215, at

162. Accordingly, this Court finds that ORIC should be granted thirty days' leave from the date of the filing of this Opinion and Order to replead its successor liability theory with respect to its fraud claims in a manner consistent with the instant Opinion and Order.

### b. *Undifferentiated Fraud Allegations Against Multiple Defendants*

■ In addition to failing under Rule 8(a), this Court finds that ORIC's Complaint falls short of Rule 9(b)'s requirements. First, as defendants point out, the Complaint fails to differentiate among the numerous Duferco defendants. Throughout the portion of its Complaint explaining the facts and events underlying the alleged fraud, ORIC refers repeatedly to "defendants" *en masse* without pleading which Duferco defendant allegedly engaged in what conduct, or even whether the alleged conduct was committed by a Duferco defendant at all, as opposed to defendants Hansa, Fink, or "John Doe[s] 1 through 100, inclusive." *See, e.g.,* (Complaint ¶¶ 21–27 & 67–73.) This is true for ORIC's three fraud-based claims as well. For example, ORIC's RICO claims, which are predicated upon alleged mail and wire fraud offenses, states that "[d]efendants Ferco Intertrade, Inc., Duferco, Inc., Duferco Steel, Inc., Duferco Trading Corp., Duferco Steel Sales, Ltd., Frank Fink, and John Cummings ... committ[ed] hundreds of acts of" mail and wire fraud. (Complaint ¶¶ 59, 64.) ORIC's seventh claim for relief for intentional misrepresentation is similarly vague and undifferentiated. Typical of the allegations in that claim is the following: "When *defendants* made these representations, they knew them to be false...." *Id.* ¶ 70 (emphasis added).

ORIC's Complaint does not even come close to achieving the purpose of Rule 9(b)—providing each defendant with notice of the claims against them—because ORIC fails to allege defendants' individual roles in the alleged fraud. A complaint's failure to provide notice to each defendant named in a fraud-based cause of action does not comport with Rule 9(b). *See O'Brien,* 936 F.2d at 676. For this reason, this Court finds that ORIC's

Complaint does not meet the standards of 9(b). Accordingly, this Court finds that all of ORIC's fraud claims—that is, its fifth, sixth and seventh claims for relief—should be dismissed. When a party's allegations fail under Rule 9(b), a court is to permit the party the opportunity to replead. *Devaney,* 813 F.2d at 569. Once again, this Court finds that ORIC should be granted thirty days' leave, computed from the date of filing of this Opinion and Order, to replead its fraud claims in a manner consistent with the instant Opinion and Order.

### c. Pleading Fraud and RICO Claims Upon Information and Belief

Defendants argue that the fraud claims in ORIC's Complaint concerning the Duferco defendants are based almost entirely upon "information and belief." (Dfts. Memo at 16.) As explained above, pleading a fraud claim in this manner generally is impermissible, with one exception carved out for relevant facts which "are peculiarly within the opposing party's knowledge." *Wexner,* 902 F.2d at 172.

In the case at bar, a great many of the facts in the Complaint are "based upon information and belief." *See* (Complaint ¶¶ 21, 25–28, 30.) All of these facts, however, are alleged in the portion of the Complaint titled the "factual background" of the case. In the parts of the Complaint which set forth ORIC's fraud allegations, no facts are alleged upon information and belief. *See* (Complaint ¶¶ 56–73.) While it is true that many of the facts alleged in the background section of the Complaint are incorporated into ORIC's fraud claims, this Court does not find it an appropriate allocation of this Court's time and resources to match pieces from one part of the Complaint to those of another in order determine the adequacy of ORIC's Complaint, especially because this Court already has found ORIC's fraud pleadings to be inadequate on other grounds. As a result, this Court finds that ORIC's pleading upon information and belief is not a basis for dismissing its Complaint.

### 3. Sufficiency of ORIC's RICO Claims

Defendants claim that plaintiff's RICO claims in its fifth and sixth claims for relief

are "legally insufficient." (Dfts. Memo at 17–26.) In support of this position, defendants advance two arguments: (1) plaintiff's RICO actions are time-barred; and (2) plaintiff failed to properly plead the predicate acts of racketeering. This Court will address each of these arguments individually.

### a. Whether ORIC's RICO Claims are Time–Barred

Defendants contend that civil RICO claims are subject to a four-year statute of limitations which is triggered by a "discovery standard" under which "the statute of limitations begins to run at the time plaintiff discovers or should have discovered his injury." *Id.* at 17–18. Moreover, defendants assert that, "under a rule of 'separate accrual,' each time a plaintiff suffers an injury resulting from defendant's alleged violations of RICO, a new cause of action arises from each injury." *Id.* In the instant case, defendants maintain that "[a]t the latest, [ORIC's] RICO claims arise at the time its pre-executed surety bonds were posted with U.S. Customs." *Id.* at 18. Defendant contends that Fink posted ORIC's bonds between June 1983 and January 1985, "at which time plaintiff knew or should have known that the bonds had been posted and, therefore, that it had been injured." *Id.* at 18 n. *. Defendants thus argue that the statute of limitations controlling ORIC's RICO claims expired between June 1987 and January 1989, at least three years prior to the commencement of this action. *Id.* at 19. In addition, to the extent ORIC asserts that Fink's posting of the bonds created only a contingent liability until the bonds were liquidated by U.S. customs, defendants argue that ORIC cannot establish causation between the posting of the bonds and the accrual of its injury at liquidation, and that this Court should dismiss ORIC's RICO claims on that basis. *Id.* at 19–21.

In opposition to defendant's arguments, ORIC submits an affidavit explaining that ORIC "was not aware of the Duferco defendants' conspiracy ... when Fink posted its bonds in 1983, 1984 and 1985," and that, because Fink and defendant Cummings had assured ORIC that Hansa and "its clients" would pay any duties levied upon the import-

ed steel, it had no grounds to suspect that it was being defrauded. (Pltf. Opp. Memo at 24–25.) ORIC also contends that it did not suffer any injury "until the first payments were made in 1989, after final resolution of the lengthy administrative proceedings concerning the decision by [U.S.] Customs to levy the duties [on the steel]." *Id.* at 24–25. ORIC does not address defendants' "causation argument." *See generally id.*

In reply, defendants submit affidavits to support their claim that "no later than January, 1985, by which time the International Trade Administration had already issued preliminary determinations and final orders requiring the assessment of antidumping and countervailing duties." (Dfts. Reply Memo at 26–27.) As a result, defendants argue that ORIC's alleged RICO injuries are time-barred because they accrued prior to ORIC's actual payment of its bond liability. *Id.* at 27. Furthermore, defendants point to exhibits submitted with an affidavit which defendants claim show that ORIC "certified in writing that it 'ha[d] incurred liability, loss, cost, or expense'" under the bonds in 1985. *Id.*

In *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 152–55, 107 S.Ct. 2759, 2764–66, 97 L.Ed.2d 121 (1987), the Supreme Court held that civil RICO actions are subject to a four-year statute of limitations. *Agency Holding,* however, "deliberately left open the question of when a civil RICO action accrues." *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 923 F.Supp. 439, 442 (S.D.N.Y.1995) (citing *Agency Holding,* 483 U.S. at 156, 107 S.Ct. at 2767). In the aftermath of *Agency Holding,* a circuit split developed, "and as many as half a dozen conflicting accrual rules have emerged." *Pahmer v. Greenberg,* 926 F.Supp. 287, 299 (E.D.N.Y.1996) (citing *Bingham v. Zolt,* 66 F.3d 553, 559 (2d Cir. 1995) (discussing circuit split), *cert. denied,* —— U.S. ——, 116 S.Ct. 1418, 134 L.Ed.2d 543 (1996)).

In *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989), the Second Circuit adopted a "rule of separate accrual" for civil RICO injuries. *Id.*

at 1104. Under this rule, each "new and independent injury" triggers its own four-year limitations period. *Id.; see also Pinnacle,* 923 F.Supp. at 442. Under the rule of separate accrual, there are two questions to be resolved in determining whether a plaintiff's RICO claim is time barred: (1) when plaintiff sustained a RICO injury; and (2) when plaintiff knew or should have known of that injury. With respect to the first issue, it can sometimes be difficult to determine when an RICO injury was incurred. *Bankers Trust* held that, where an injury is "speculative" or its "amount and nature unprovable," no RICO cause of action accrues until the injury "become[s] definite." 859 F.2d at 1106 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971)). The *Bankers Trust* court, for example, found that a plaintiff creditor's injury was too speculative too accrue because the amount of its claims against a debtor was unascertainable until the debtor's assets were calculated and reorganized through bankruptcy proceedings. *Id.* Similarly, in *Cruden v. Bank of New York,* 957 F.2d 961 (2d Cir.1992), the Second Circuit held that the RICO injuries claimed by plaintiffs who held defaulted debentures issued by defendant did not accrue until the debentures went into default. *Id.* at 977–78. Rejecting defendant's argument that the RICO injury accrued earlier, when defendant fraudulently transferred them to plaintiffs, the court reasoned that at that earlier point, "the particular injury was speculative and consequently not remediable under [RICO]." *Id.* at 978.

■ On the other hand, a RICO injury need not be precisely calculable in order to be sufficiently definite and nonspeculative for a civil RICO cause of action to accrue. For instance, in *131 Main St. Assoc. v. Manko,* 897 F.Supp. 1507 (S.D.N.Y.1995), plaintiff investors claimed RICO injuries as a result of their purchases of limited partnerships in what eventually proved to be defendant's sham tax shelters. *Id.* at 1512–13. Once the Internal Revenue Service ("IRS") detected defendant's scheme and imposed tax liability on plaintiffs, the plaintiffs and the IRS negotiated a "global settlement" agreement which

fixed the amount of allowable gains and losses under plaintiffs' tax shelters. *Id.* at 1516. In determining that plaintiffs' civil RICO cause of action accrued long before the IRS calculated plaintiffs' precise tax liability, Judge Sand rejected plaintiffs' argument that they sustained no RICO injury until their global settlement was finally implemented. *Id.* at 1517. Judge Sand reasoned that

> [w]hatever the sum of money that hung in the balance as a result of the [global settlement agreement] implementation issue, it did not render plaintiffs' injuries incalculable. *Bankers Trust* does not say that a potential plaintiff must be able to calculate his loss down to the penny before his RICO injury can be said to exist; all that is required is that the injury not be "speculative."

*Id.* (citing *Bankers Trust,* 859 F.2d at 1106); *see also Butala v. Agashiwala,* 916 F.Supp. 314, 315–17 (S.D.N.Y.1996) (where plaintiffs purchased interest in failed real estate venture based on defendant's financial projections, Judge Koeltl rejected plaintiffs' argument that their RICO injury did not accrue until their final loss was computed, explaining that "plaintiffs' argument . . . is premised on a misunderstanding of the difference between when an injury occurs and when damages from that injury are fully quantifiable. . . .").

■■■ With respect to the second issue, when a plaintiff knew or should have known of a RICO injury, the four-year statute of limitations "begins to run not, as in ordinary fraud actions, from the date a plaintiff discovered or should have discovered the 'bad acts' causing him injury, but from the date a plaintiff discovered or should have discovered the specific *injury* itself." *Id.* at 1514 (emphasis added). Accordingly, "[a] cause of action under RICO accrues when the plaintiff suffers an injury, and the statute of limitations begins to run when the plaintiff discovers or should discover that injury." *Id.* at 317. In determining when a plaintiff should have discovered an injury, the test "is an objective one, to wit, when a reasonable person should have discovered the RICO injury." *In re Integrated Resources Real Estate*

*Ltd. Partnerships Sec. Litig.,* 850 F.Supp. 1105, 1117–18 (S.D.N.Y.1993).

In the instant case, ORIC filed its Complaint on January 8, 1992. Accordingly, any claims for RICO injuries which ORIC discovered or should have discovered prior to January 8, 1988, are time-barred by RICO's four-year statute of limitations. To reiterate, defendants assert that, because plaintiff alleges that its bonds became "binding obligations" when they were posted in 1983–85, those bonds constituted RICO injuries that should have been discovered at that time. (Dfts. Memo at 19–20.) Accordingly, defendants contend that ORIC's RICO claims are time-barred. *Id.* ORIC counters that its RICO injury was its actual payment of the U.S. Customs bonds which Fink posted, not the creation of its obligation to pay those bonds, as defendants contend. (Complaint ¶ 34); (Pltf. Opp. Memo at 24–25.) Because the first of these payments was not made until 1989, ORIC argues that its first RICO injury was not sustained—and its RICO cause of action thus did not accrue—until that time, and that the four-year civil RICO statute of limitations cannot bar its action filed in January 1992. (Pltf. Opp. Memo at 24–25.) For the following reasons, this Court finds that ORIC's argument is correct.

Because this Court considers this issue in the context of a Rule 12(b)(6) motion, it is precluded from relying upon any document other that ORIC's Complaint. Accordingly, this Court will disregard the evidence submitted by both parties outside the Complaint with respect to the accrual of ORIC's RICO injury. The Complaint alleges that, although Fink's posting ORIC's bonds "created a binding obligation on the part of [ORIC] to pay the duties and taxes found to be due on the imported steel products," (Complaint ¶ 33), ORIC "was not obligated to pay anything under its bonds until," *inter alia,* U.S. Customs liquidated the postings and made demands upon the "actual importer" and ORIC. *Id.* ¶ 34. The Complaint further explains that "[s]ince [ORIC's] liability under its bonds was contingent on these events, [ORIC] did not incur any recoverable damages under the bonds until . . . [the Commerce Department] . . . issue[d] an order

requiring U.S. Customs to 'liquidate' [ORIC's bond] entries with an assessment of countervailing duties in June 1987." *Id.* ¶ 35. This order was delayed, according to the Complaint, by administrative and judicial review proceedings, and the countervailing duties ultimately were not levied until February 1988 and 1989. *Id.* ¶ 36.

■ In light of the allegations pleaded in ORIC's Complaint, this Court finds that ORIC's RICO injury was not sustained until U.S. Customs finally liquidated ORIC's bonds in 1988 and 1989. Prior to that time, ORIC's injury was contingent upon determinations by the Commerce Department and U.S. Customs, as well as administrative and judicial proceedings. As such, the injury was then too speculative and conjectural to constitute a RICO injury. This is not a case in which it can be said that a RICO injury definitively occurred at one point, and the damages resulting from that injury could be fully quantified only later. *See, e.g., 131 Main St. Assoc.,* 897 F.Supp. at 1517; *Butala,* 916 F.Supp. at 317. Here, no liability at all was imposed upon ORIC until the Commerce Department and U.S. Customs made their determination, and those determinations withstood administrative and judicial review. Until that point, the possibility existed that ORIC would emerge from its involvement in these transactions with no liability, and thus, with no RICO injury. Accordingly, this Court finds that ORIC's RICO cause of action accrued only after liability was finally imposed upon it beginning in February 1988, not several years earlier when its bonds were posted. Because ORIC's RICO cause of action accrued after January 8, 1988—and thus, accrued within four years of the commencement of this litigation—this Court need not consider the corollary issue of when the RICO statute of limitations began to run (that is, whether ORIC discovered or should have discovered its RICO injury within four years of filing its Complaint). Accordingly, this Court finds that the four-year civil RICO statute of limitations does not bar ORIC's RICO claims.

■ Finally, defendants' "causation argument" does not require a different re-

sult. To reiterate, defendants contend that, if ORIC's RICO injury did not accrue until U.S. Customs liquidated its bonds, then "its RICO claims must also fail since [ORIC] cannot demonstrate that such injury resulted from the alleged RICO violations." (Dfts. Memo at 21.) This argument, however, fails to acknowledge defendants' alleged direct role in causing ORIC's bonds to be posted in the first instance. As defendants point out, only those whose injuries are proximately caused by a RICO violation may pursue a civil RICO cause of action. *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). In *Holmes,* in order to limit the scope of causation in civil RICO actions, the Supreme Court "demand[ed] ... some direct relation between the injury asserted and the injurious conduct alleged." *Id.* In that case, where a RICO stock manipulation conspiracy caused the insolvency of a number of brokers, the Court held that non-purchasing customers of the brokers stood at too remote a distance from the wrongful conduct to sustain civil RICO claims against the conspirators. *Id.* at 273, 112 S.Ct. at 1313. In the case at bar, however, ORIC alleges that the defendants' conspiracy was the primary causative agent behind the posting of ORIC's bonds for the Brazilian steel. Accordingly, even if ORIC's actual injury was not sustained until U.S. Customs liquidated its bonds, defendants' alleged role in the bonds' posting stands in direct relation to ORIC's injury.

### b. Whether ORIC Properly Pled Predicate RICO Acts

Defendants claim that ORIC failed to properly plead its RICO claim. Specifically, they claim that ORIC failed to sufficiently plead mail and wire fraud, scienter, and conspiracy. (Dfts. Memo at 22–29.) ORIC opposes each of these arguments, claiming that its pleadings adequately set forth RICO claims. (Pltf. Opp. Memo at 25–32.) Because defendants' argument that the Complaint inadequately pleads mail and wire fraud offenses as the predicate acts for ORIC's RICO claims is sufficient for this Court to dismiss ORIC's RICO claims, this

Court need not consider the adequacy of ORIC's scienter and conspiracy pleading.

Defendants argue that "[a] proper RICO claim must allege the commission by each defendant of at least two predicate acts constituting the racketeering activity for which each such defendant could be indicted." (Dfts. Memo at 22.) Moreover, defendants contend that, although ORIC predicates its RICO claims upon mail fraud and wire fraud offenses, ORIC's Complaint fails to comply with the requirement that "[t]he time, place, manner and content" of the alleged mail and wire frauds must be specifically pleaded. Id. As a result, ORIC asserts that "[b]y any standard, [ORIC's] claims of mail and wire fraud are woefully inadequate and must be dismissed." Id. at 24.

In opposition to defendants' arguments that its mail and wire fraud predicate acts are not sufficiently pled, ORIC points out that "quite plainly annexed to [ORIC's] [C]omplaint as Exhibits A and B are two charts that set forth in minute detail the date, place and monetary amount of every entry of steel imported pursuant to defendants' fraudulent enterprise." (Pltf. Opp. Memo at 25.) ORIC argues that "[i]nherent with [each of these] entr[ies][is] a series of interstate mail and wire communications" between ORIC, Hansa, the Duferco defendants, Fink and Cummings, all of whom resided in different states. Id. at 25–26. Finally, ORIC claims that, although it is "unable to state the dates and times of [the] Duferco defendants' communications" without discovery, the Complaint sets forth as specifically as possible the communications sufficient to state a RICO claim. Id.

▮▮▮ Title 18, United States Code, Section 1964(c) provides the basis for a civil RICO cause of action. It provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c). Accordingly, to pursue a civil RICO claim, a plaintiff must establish a violation of Title 18, United States Code, Section 1962 (the "RICO statute"). The RICO statute in relevant part provides:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).· In order to state a civil claim under the RICO statute, "a plaintiff has two pleading burdens." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir.1983), cert. denied, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). First, a plaintiff must allege that the defendant has violated "the substantive RICO statute ... commonly known as 'criminal RICO.'" Id. In order to meet this initial burden a plaintiff must

allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.

Id.; see also Zigman v. Giacobbe, 944 F.Supp. 147, 152 (E.D.N.Y.1996). Once a civil plaintiff adequately pleads defendant's violation of the RICO statute by alleging these seven elements, "plaintiff [also] must allege that he was 'injured in his business or property by reason of a violation of [the RICO statute].'" Moss, 719 F.2d at 17 (emphasis in original).

▮▮▮ In the instant case, ORIC bases its fifth and sixth claims for relief upon defendants' alleged RICO violations. See (Complaint ¶¶ 56–65.) Defendants attack ORIC's fifth and sixth claims under the second element above—specifically, that ORIC insufficiently alleged two or more predicate acts under the RICO statute. (Dfts. Memo at 22–24.) The Complaint alleges mail fraud, under Title 18 United States Code, Section 1341, and wire fraud, under Title 18, United States Code, Section 1343, as the predicate acts for ORIC's RICO claims. See (Com-

plaint ¶¶ 59, 64.) The elements of mail fraud and wire fraud are "essentially the same." *Colony at Holbrook, Inc. v. Strata G.C., Inc.,* 928 F.Supp. 1224, 1231 (E.D.N.Y.1996). To establish mail and wire fraud claims, a plaintiff must plead that defendants engaged in: (1) a scheme or artifice to defraud; (2)'for the purpose of obtaining money or property (or of depriving another of the intangible right of honest services); and (3) the use of the mails or interstate wire communications in furtherance of the scheme. *See id.; Zigman,* 944 F.Supp. at 153 (citing *United States v. Altman,* 48 F.3d 96, 101 (2d Cir. 1995)). Acts done inadvertently, mistakenly, or in good faith do not constitute mail or wire fraud. *O'Malley v. New York City Transit Authority,* 896 F.2d 704, 706 (2d Cir.1990).

Where predicate acts underlying a RICO claim are based upon mail fraud and wire fraud, the pleadings alleging the elements of those offenses must meet the rigorous requirements of Rule 9(b). *See S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.,* 84 F.3d 629, 632–33 (2d Cir.1996); *Zigman,* 944 F.Supp. at 152. To reiterate, Rule 9(b) in relevant part provides:

> In all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). Rule 9(b) was enacted in part to insure that defendants receive fair notice of claims against them, and to enable them to prepare a defense both of the merits of their case as well as of their reputation. *See Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir.1990); *Hutton v. Klabal,* 726 F.Supp. 67, 72 (S.D.N.Y.1989); *Philan Ins. Ltd. v. Frank B. Hall & Co.,* 712 F.Supp. 339, 342 (S.D.N.Y.1989). "These concerns are even more immediate in civil RICO actions, because such suits 'implicate the reputation interests of defendants accused of committing racketeering offenses.'" *Atlantic Gypsum Co., Inc. v. Lloyds Int'l Corp.,* 753 F.Supp. 505, 512 (S.D.N.Y.1990) (quotation omitted); *see also Zigman,* 944 F.Supp. at 153.

When the fraud alleged is mail or wire fraud, the Second Circuit clearly has set forth the specific pleading requirements under Rule 9(b). *See McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir.1992); *Colony at Holbrook,* 928 F.Supp. at 1230–31. According to the Second Circuit, in order adequately to plead the predicate act of mail or wire fraud

> the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. Plaintiffs asserting mail fraud [or wire fraud] must also identify the purpose of [the mail or wire communication] within the defendant's fraudulent scheme.

*McLaughlin,* 962 F.2d at 191 (internal quotation omitted).

Turning finally to the case at bar, this Court finds that ORIC's Complaint does not even remotely approach *McLaughlin's* requirements for pleading mail and wire fraud as predicate acts for its civil RICO claims. The only references in the Complaint to mail and wire fraud are the following:

59. Defendants Ferco Intertrade, Inc., Duferco Inc., Duferco Steel, Duferco Trading Corp., Duferco Steel Sales, Ltd., Frank Fink, and John Cummings were employed by or associated with the enterprises referred to in paragraph 58 [Duferco USA and Hansa] and conducted or participated, directly or indirectly, in the conduct of the enterprises' affairs, through a pattern of racketeering within the meaning of 18 U.S.C. § 1961(1)(B), by:

(a) *committing hundreds of acts of mail fraud* indictable under 18 U.S.C. § 1341 in the course of conceiving and executing the above described scheme to defraud plaintiff and the United States; and

(b) *committing hundreds of acts of wire fraud* indictable under 18 U.S.C. § 1343 in the course of conceiving and executing the above-described scheme to defraud plaintiff and the United States.

\* \* \* \* \* \*

64. Defendants Ferco Intertrade, Inc., Duferco Inc., Duferco Steel, Duferco Trading Corp., Duferco Steel Sales, Ltd., Frank Fink, and John Cummings were employed by or associated with the enterprises referred to in paragraph 63 [Duferco USA and Hansa] and conducted or participated, directly or indirectly, in the conduct of the enterprises' affairs, through a pattern of racketeering within the meaning of 18 U.S.C. § 1961(1)(B), by:

(a) *conspiring to commit hundreds of acts of mail fraud* indictable under 18 U.S.C. § 1341 in the course of conceiving and executing the above described scheme to defraud plaintiff and the United States; and

(b) *conspiring to commit hundreds of acts of wire fraud* indictable under 18 U.S.C. § 1343 in the course of conceiving and executing the above-described scheme to defraud plaintiff and the United States.

(Complaint ¶¶ 59, 64 (emphasis added).)

As is plain from these excerpts, ORIC's Complaint utterly fails to state when, where, how, or for what purpose defendants committed any acts of mail or wire fraud. Furthermore, in one of its more glaring shortcomings, the Complaint fails to specify *which* of the numerous defendants engaged in any act of mail or wire fraud. This failure blatantly violates Rule 9(b)'s mandate that where multiple defendants are involved, fraud allegations must be particularized as to each defendant. *See Lou v. Belzberg,* 728 F.Supp. 1010, 1022 (S.D.N.Y.1990). Finally, even though mail and wire fraud are specific intent offenses, *O'Malley,* 896 F.2d at 706, ORIC does not allege that defendants acted with any level of *mens rea,* let alone specific intent. Simply averring that "hundreds of acts" of mail and wire fraud were committed falls so far short of Rule 9(b)'s standards that it is difficult for this Court to imagine that ORIC would attempt to argue that its mail and wire fraud allegations are sufficient. Nevertheless, ORIC persists.

In its opposition papers, ORIC asserts that the exhibits attached to its Complaint "set forth in minute detail the date, place, and monetary amount of every entry of steel imported pursuant to defendants' fraudulent enterprise . . . [and that] [i]nherent with every entry would be a series of interstate mail and wire communications [among defendants]." (Pltf. Opp. Memo at 25–26.) This argument, however, is completely meritless. The entries in the exhibits list each of the bonds posted for the imported steel. *See* (Complaint at Exhs. A & B). As such, the exhibits do not state the time, place, speaker or substance of any fraudulent communications, or even state that any defendant made any communication via wire or mail. Moreover, plaintiff's assertion in its brief that mail and wire communications are "inherent" to defendants' scheme is precisely the type of vague allegation which Rule 9(b) is designed to prohibit. *See Colony at Holbrook,* 928 F.Supp. at 1233 ("pleading a viable [RICO] claim based on mail or wire fraud requires that the plaintiff do more than state that the use of wire and mail communication to effectuate an alleged scheme is self-evident").

■■ While this Court recognizes that repleading generally is permitted where fraud claims are dismissed for lack of specificity pursuant to Rule 9(b), *see Official Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 669 (2d Cir.1989) (reversing district court's denial of leave to replead), in the instant case, this Court finds that granting permission to replead is inappropriate. As demonstrated above, ORIC's Complaint does not allege a single specific fraudulent mail or wire communication. Had ORIC stated in its opposition papers that certain facts could be pled in support of their mail and wire fraud allegations, then this Court would not hesitate to grant leave to replead. ORIC, however, admits in its opposition submissions that it is "unable to state the dates and times of [the] Duferco defendants' communications with Hansa and Fink without discovery . . . ." (Pltf. Opp. Memo at 26.) In this Court's view, a RICO claim predicated on mail and wire fraud allegations must rest on firmer ground that an assertion that mail and wire communications are "inherent" to defendants' scheme, and that plaintiff hopes discovery will provide support for this assertion.

Moreover, because ORIC has conceded that it possesses no further facts to plead in support of the alleged mail and wire fraud,

this Court finds that leave to replead ORIC's RICO claims should be denied as futile. *See Colony at Holbrook,* 928 F.Supp. at 1233 (denying leave to replead as futile); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend pleadings may not be denied without justification); *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1198 (2d Cir.1989) (leave to amend pleadings will be denied when amendment would be futile). This Court's decision not to *sua sponte* grant leave to replead is particularly appropriate where, as here, a plaintiff does not seek leave to replead in their opposition papers to defendant's motion to dismiss, or by way of a formal motion. *See In re American Express Co. Shareholder Litig.,* 39 F.3d 395, 402 (2d Cir.1994) (Winter, J.); *see also Confederate Memorial Ass'n. Inc. v. Hines,* 995 F.2d 295, 299 (D.C.Cir.1993) (district court "could hardly" have abused its discretion in not *sua sponte* granting leave to replead when such request came only in opposition papers to motion to dismiss); *Song v. City of Elyria, Ohio,* 985 F.2d 840, 843 (6th Cir.1993) ("district court had no duty to instruct plaintiffs that they had the opportunity to move to amend their complaint"). Accordingly, this Court finds that ORIC's fifth and sixth claims for relief should be dismissed with prejudice.

### 4. ORIC's Claims for "Reimbursement," "Indebtedness" "Indemnity," & "Unjust Enrichment"

■ ORIC's first four "claims for relief" are: (1) "reimbursement"; (2) "indebtedness"; (3) "indemnity"; and (4) "unjust enrichment." *See* (Complaint ¶¶ 40–55.) Each of these claims demands that undifferentiated "defendants" pay ORIC $4,412,805.83 which ORIC asserts it paid to U.S. Customs on behalf of "defendants." *Id.* As defendants point out, however, "the ambiguity and lack of specificity of plaintiff's pleading.... burdens defendants by requiring them to speculate as to the meaning of plaintiff's claims." (Dfts. Memo at 29 n.*.) This Court finds itself similarly burdened by the shoddiness of ORIC's Complaint.

Each of ORIC's first four claims states, in essence: "We paid $4,412,805.83 to U.S. Customs and we think defendants are obliged to pay it back to us, with interest." ORIC's "indebtedness" claim is typical. That claim reads in full:

45. Paragraphs 1 through 44 are realleged.

46. Within the past four years, defendants became indebted to plaintiff for money paid, laid out, and expended for defendants by plaintiff under the terms of various bonds undertaken at defendants' special insistence and request.

47. None of this sum has been paid, and there is now due, owing and unpaid the sum of $4,412,805.83, plus pre-judgment interest to be calculated at the lawful rate from the dates of payment.

48. By reason of the foregoing, defendants are obliged to reimburse plaintiff the sum of $4,412,805.83, or such other amount as may be established by the evidence, plus pre-judgment interest to be calculated at the lawful rate from the dates of payment.

(Complaint ¶¶ 45–48.) Nowhere in the first four claims does ORIC set forth the elements of those causes of action or that it deserves the relief requested because its allegations satisfy those elements. *See generally id.* ¶¶ 40–55.

To reiterate, in considering a motion to dismiss pursuant to Rule 12(b)(6), a court is to look only to the four corners of the complaint in order to evaluate the legal viability of the claims stated therein. *See* Fed. R.Civ.P. 12(b)(6); *Cortec Indus.,* 949 F.2d at 47. Moreover, a court considering such a motion must assume all "well-pleaded allegations" contained in the complaint are true, and draw all reasonable inferences in favor of the defendant. *Albright,* 510 U.S. at 268, 114 S.Ct. at 810. However, "legal conclusions, deductions, or opinions couched as factual allegations are not" accorded deference. 2A Moore's Federal Practice, ¶ 12.07[2.–5], at 12–84. In addition, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Id.* at 12–85.

As previously noted, ORIC's Complaint utterly fails to allege the facts which satisfy the elements of its first four claims of relief, or

even to state what those elements are. While this Court recognizes its duty to construe ORIC's well-pleaded allegations in the light most favorable to it, this Court is not obliged to judicially reconstruct ORIC's Complaint so that it may state a viable cause of action. *See, e.g., McClenathan v. Rhone-Poulenc, Inc.,* 926 F.Supp. 1272, 1274 (S.D.W.Va.1996) ("[t]here is no duty on the part of a court to create a claim which the plaintiff has not spelled out in his complaint"); *Sable v. Southmark/Envicon Capital Corp.,* 819 F.Supp. 324, 328 (S.D.N.Y. 1993) ("[t]he [d]istrict [c]ourt has no obligation to create, unaided by plaintiff, new legal theories to support a complaint"); *Block v. Marino,* 819 F.Supp. 349, 351 (S.D.N.Y.1993); *Barsam v. Pure Tech Int'l, Inc.,* 864 F.Supp. 1440, 1445–46 (S.D.N.Y. 1994); *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1081–82 (D.C.Cir.1984); *Shelter Mutual Ins. Co. v. Public Water Supply District No. 7 of Jefferson County Miss.,* 747 F.2d 1195, 1198 (8th Cir.1984). Accordingly, this Court finds that ORIC's first four claims for relief should be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### 5. ORIC's Claim for Injunctive Relief

ORIC's ninth claim for relief asserts that it has "no adequate remedy at law for the inquiries [sic] being suffered in that it is impossible for [ORIC] to determine the precise amount of damage it will suffer unless defendants are compelled to pay the amounts demanded by U.S. Customs and/or to defend [ORIC] from and against [U.S.] Customs' claims." (Complaint ¶ 83.) As a result, ORIC seeks "a permanent injunction requiring defendants to pay the amount which [U.S.] Customs has demanded [from ORIC] ... and/or to hold plaintiff harmless from such claims[.]" *Id.* ¶ 87.I.

In its motion to dismiss this claim, defendants argue that, by seeking an injunctive remedy for monetary damages, "[t]he absurdity of [ORIC's] allegations is readily apparent." (Dfts. Memo at 34.) Defendants assert that ORIC's "allegation of purported irreparable harm contravenes the well-settled rule in this Circuit that an injunction will not be granted where money damages will

suffice," and that its "claim for injunctive relief is frivolous, without basis in law, and must be dismissed." *Id.* at 34–35. ORIC does not respond to defendants' argument on this point. *See generally* (Pltf. Opp. Memo.)

To obtain a preliminary injunction in the Second Circuit, a party must establish: "(1) irreparable harm, and (2) either (a) a likelihood of success on the merits, or (b) a balance of hardships tipping decidedly toward the party seeking the injunctive relief." *Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir. 1992); *see also Richard Feiner & Co., Inc. v. Turner Entertainment Co.,* 98 F.3d 33, 34 (2d Cir.1996). The standard for obtaining a permanent injunction is "essentially the same" as for a preliminary injunction with the exception that the plaintiff must actually succeed on the merits of the case, rather than merely demonstrate that success is likely in a future proceeding. *See Clarkson v. Coughlin,* 898 F.Supp. 1019, 1035 (S.D.N.Y. 1995) (citing *Amoco Production Co. v. Village of Gambell,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 1404 n. 12, 94 L.Ed.2d 542 (1987)). In order for a party to meet the first prong of this standard, the "potential injury ... justify[ing] the granting of injunctive relief ... must be irreparable; that is, *it must be the kind of injury for which an award of money cannot compensate." Sperry Int'l Trade, Inc. v. Government of Israel,* 670 F.2d 8, 12 (2d Cir.1982) (emphasis added). "Thus, if it appears that the potential harm to the [requesting] party is simply a monetary loss, the potential injury is normally not deemed irreparable[,] and hence does not justify injunctive relief." *Id.; see also Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (irreparable injury "must be one incapable of being fully remedied by monetary damages").

In the case at bar, the only injuries claimed by ORIC are monetary obligations and expenditures due to defendant's alleged wrong-doing. As such, ORIC's claimed injury is precisely the type of harm which injunctive relief is *not* designed to remedy. Accordingly, this Court finds that ORIC's ninth claim for relief, in the form of a permanent injunction, fails to state a claim upon which relief can be granted, and thus, should be

dismissed. Moreover, because there is absolutely no basis in law for an injunction to issue to remedy plaintiff's alleged monetary damages, this Court finds that repleading this claim would be futile, and therefore plaintiff's ninth claim for relief should be dismissed with prejudice. *See Colony at Holbrook*, 928 F.Supp. at 1233.

### 6. ORIC's Claim for Declaratory Relief

In its tenth claim for relief, ORIC asserts that declaratory relief is appropriate in this case because "an actual controversy has arisen and now exists" because ORIC "contends that defendants are responsible for payment of the amounts demanded by U.S. Customs ... whereas defendants dispute these contentions." (Complaint ¶ 86.) ORIC claims that a declaratory judgment is necessary in order to determine the parties' respective rights and duties. *Id.* ¶ 87.

In support of their motion to dismiss, defendants claim that, in addition to ORIC's claim for declaratory relief, ORIC "has asserted no less than nine other claims for relief, which equally address the issue of whether any of the defendants should be liable for antidumping and/or countervailing duties already paid by [ORIC] ∴ and/or for those duties currently outstanding." (Dfts. Memo at 35.) ORIC argues that declaratory relief is inappropriate in cases, such as this, where "it is sought merely to determine issues which are involved in a case which is already pending and can properly be disposed of pursuant to such litigation." *Id.* Once again, ORIC fails to respond to defendants' arguments regarding this issue. *See generally* (Pltf. Opp. Memo.)

▆▆▆▆ Title 28, United States Code, Section 2201 (the "Declaratory Judgment Act") grants courts the ability to effectuate declaratory relief in certain instances. The Declaratory Judgment Act in relevant part provides:

(a) In a case of actual controversy within its jurisdiction, *except ... in any civil action involving an antidumping or countervailing duty proceeding* ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any in-terested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (1993) (emphasis added). By enacting the Declaratory Judgment Act, "Congress sought to place a remedial arrow in the district court's quiver; it created the opportunity, rather than the duty," to grant a party declaratory relief. *Wilton v. Seven Falls Co.*, —— U.S. ——, ——, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). It is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). As such, the issuance of a declaratory judgment rests within the district court's discretion. *See id.; Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 32 (2d Cir.1996). Moreover, "[i]t is well settled ... that a declaratory judgment may be refused where it would serve no useful purpose ... or where it is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein." *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 343 (9th Cir.) (quotation omitted), *cert. denied*, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966).

▆▆▆▆ In the instant case, this Court first observes that a declaratory judgment appears to be barred by the plain language of the Declaratory Judgment Act, as it clearly is a "civil action involving an antidumping or countervailing duty proceeding." 28 U.S.C. § 2201(a). More importantly, however, is the well-established law that a declaratory judgment is improper where the issues raised in it may be more appropriately resolved in a pending litigation. Here, ORIC simply seeks a declaratory judgment concerning the claims raised in the remainder of its Complaint. As such, those claims are an improper subject for a declaratory judgment. Accordingly, this Court finds that ORIC's tenth claim for relief should be dismissed. Moreover, because there the issuance of a declaratory judgment is discretionary, and there no basis in law for a declaratory judg-

ment to issue in this case, this Court finds that repleading this claim would be futile, and therefore plaintiff's tenth claim for relief should be dismissed with prejudice. *See Colony at Holbrook,* 928 F.Supp. at 1233.

## II. Defendants' Motion for Sanctions

In addition to their motion to dismiss, defendants move this Court to impose sanctions against ORIC and/or its counsel pursuant to Rule 11. (Dfts. Memo at 37.) Defendants contend that ORIC and its attorneys failed to undertake a reasonable inquiry into the merits of their case prior to filing their Complaint, as is required by Rule 11. *Id.* at 37–38. Defendants assert that

[a]ny reasonable inquiry conducted prior to the commencement of this action would have revealed that[:] (a) Duferco Ltd. (U.S.A.) was the *only* 'Duferco' entity with any manner of relationship to the underlying transactions; (b) Duferco Ltd. (U.S.A.) was dissolved on June 17, 1988; and (c) the assertion of any claims against that dissolved entity were barred by Section 278 of the Delaware Corporate Law. Such inquiry would also have revealed that Duferco Steel, Inc. and Duferco Trading Corp. (now known as Duferco Energy Group, Inc.) were not even in existence at the time of the underlying transactions. Further reasonable inquiry would have revealed the existence of the [September 1983] Contract and that pursuant to such agreement, it was *Hansa World* which agreed to assume all liability for an counterclaims or antidumping duties which might be imposed.

*Id.* at 39 (emphasis in original). Defendants further contend that sanctions are appropriate because a reasonable inquiry would have revealed that certain of its claims were time-barred. *Id.* at 40–41.

Predictably, ORIC counters that "[s]anctions under Rule 11 are inappropriate in this litigation." (Pltf. Opp. Memo at 35.) ORIC submits affidavits attesting to its counsel's reasonable pre-filing inquiry and also states that its investigation was "blocked by the inherent self-concealing activities of the defendants in this matter, who intentionally concealed the activities of the Duferco defendants in the importation of Brazilian steel, which is the subject of this lawsuit." *Id.* ORIC also maintains that, after the commencement of this litigation, its investigation "was further thwarted by refusal of the Duferco defendants' attorney . . . to permit limited discovery. . . ." *Id.* at 36.

As an initial matter, this Court notes that Rule 11 was amended in 1993. Because the instant motion was brought, and the submissions underlying the instant motion were filed, prior to 1993, this Court must resolve the issue of which version of the Rule controls the instant case. This issue, however, is not a new one for this Court. *See Magnotta v. Berry,* No. 91 Civ. 0531, 1996 WL 11238, at *2 (S.D.N.Y. Jan. 5, 1996) (Edelstein, J.). Prior to the 1993 amendment, Rule 11 provided in relevant part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name. . . . The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact. . . .

*Id.* at *3. The 1993 amendments changed this section of Rule 11.

*Id.* at *2. As amended, Rule 11 provides in relevant part:

(a) Every pleading, written motion, or other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. . . .

(b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

(1) It is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

\* \* \* \* \* \*

(c) If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that violated subdivision (b) or are responsible for the violation.

Fed.R.Civ.P. 11(a)-(c).

One of the changes enacted by the amendments to Rule 11 was the discretion granted to courts in deciding whether to impose sanctions. In the pre–1993 Rule 11, if "a pleading, motion or other paper [was] signed in violation of this rule, the court ... shall impose ... an appropriate sanction." *Magnotta*, 1996 WL 11238, at *3 (emphasis added). Under amended Rule 11, however, a "court ... *may* impose an appropriate sanction" for a violation. Fed.R.Civ.P. 11(c).

The 1993 amendments took effect on December 1, 1993, and are "applicable to all proceedings in civil cases thereafter commenced and, insofar as just and practicable, all proceedings in civil cases then pending." *Magnotta*, 1996 WL 11238, at *3 (quoting *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir. 1994)). In determining whether to apply the amended rule to pending cases, the Second Circuit has found that it is inappropriate to apply the amendments retroactively because charging a litigant "with knowledge of a rule not in effect at the time of filing ... would not advance Rule 11's central goal of deterring baseless filings." *Knipe*, 19 F.3d at 78 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2449, 110 L.Ed.2d 359 (1990)); *see also United States v. Merritt–Meridian Constr. Corp.*, 890 F.Supp. 1213, 1226 (S.D.N.Y.1995) (Chin, J.) ("[s]ince the conduct at issue occurred[,] and Judge Goettel made a finding that Rule 11 was violated[,] prior to the effective date of the 1993 amendments, the pre-December 1, 1993 version of Rule 11 applies"); *Kraemer*

*Export Corp. v. Peg Perego U.S.A., Inc.*, No. 93 Civ. 0198; 1994 WL 86357, at *6 (S.D.N.Y. Mar. 17, 1994) ("[i]n this case, which was pending when the new Rule [11] took effect, th[is] Court finds it is just and appropriate to apply the version in effect at the time the motion was filed").

Nevertheless, the Second Circuit has also stated that "[b]ecause Rule 11 sanctions should be imposed with caution ... a just an practicable application of the amended Rule requires that the district court be afforded an opportunity to exercise its discretion whether to impose sanctions." *Knipe*, 19 F.3d at 78. Thus, the Second Circuit has concluded that although a district court should apply the pre-amendment rule when examining conduct that occurred prior to the effective date of the 1993 amendments, "a district court should eschew the mandatory imposition of sanctions that is required under the [pre-amendment] rule." *Magnotta*, 1996 WL 11238, at *3. Instead, a district court should use its discretion is determining whether to impose sanctions, as permitted under the 1993 amendments. *Id.*

 In the instant case, this Court finds that the pre–1993 Rule 11 applies because ORIC's Complaint, which defendants claim is sanctionable, was filed long before December 1, 1993. *See* (Complaint (filed on January 8, 1992).) This finding is consistent with this Court's past practice. *See Magnotta*, 1996 WL 11238, at *3 ("the pre–1993 rule applies because the petition which contains the statements at issue was filed on January 11, 1991"). However, in accordance with the Second Circuit's dictates, this Court will exercise its discretion in determining whether to impose sanctions in the case at bar. *See Knipe*, 19 F.3d at 78.

 Under either version of the rule, "Rule 11 imposes an affirmative duty on the signer [of a court submission] to make a reasonable inquiry on the viability, legally and factually, of the claims made." *Segarra v. Messina*, 153 F.R.D. 22, 29, *reconsideration denied in relevant part*, 158 F.R.D. 230 (N.D.N.Y.1994) (citation omitted). "There is no absolute definition of a 'reasonable inquiry' into the factual sufficiency of a claim, but

the court will appraise an attorney's efforts according to how much time the attorney had for the investigation and the feasibility of publicly verifying the facts." *Televideo Sys., Inc. v. Mayer,* 139 F.R.D. 42, 47 (S.D.N.Y. 1991) (citation omitted). Moreover, because Rule 11 requires an attorney to perform a "reasonable inquiry," the fact that an attorney made an incorrect factual allegation in good faith is irrelevant to a court's Rule 11 analysis. *Calloway v. Marvel Entertainment Group,* 854 F.2d 1452, 1474 (2d Cir. 1988) ("attorneys are expected to measure up to minimal standards of professional competence under the Rule and thus may not excuse their conduct on the ground that they were acting in good faith") (citations omitted). Nevertheless, a district court must be careful not to impose sanctions that "chill an attorney's creative, imaginative or enthusiastic advocacy on his client's behalf." *Kraemer,* 1994 WL 86357, at *8 (quotation omitted).

In the case at bar, this Court finds that Rule 11 sanctions are inappropriate. First, ORIC has submitted affidavits from its attorney's which explain the manner and rigor of its pre-filing investigative procedures. *See* (Affidavit of T. Randolph Ferguson, *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 92 Civ. 0119, ¶¶ 4–47 (Sept. 14, 1992)); (Affidavit of Thomas P. Lynch, *Old Republic Ins. Co, v. Hansa World Cargo Serv., Inc.,* 92 Civ. 0119, ¶¶ 3–12 (Sept. 17, 1992).) Defendants do not contest these assertions. *See generally* (Dfts. Reply Memo.) Moreover, although defendants contend that ORIC's Complaint contains many allegations which ORIC would have discovered to be false after a reasonable inquiry, this Court previously resolved several issues involving these allegations in ORIC's favor. For example, this Court found that Duferco USA, Duferco Steel and Duferco Trading's capacities to be sued hinge on evidence which cannot be judicially noticed because defendants failed properly to submit necessary information to this Court. Similarly, although this Court found that ORIC did not— and, by its admissions in its brief, cannot— adequately plead its RICO claims, this Court found that those claims are not barred by RICO's four-year statute of limitations. As a result, this Court cannot say with certainty that ORIC failed to undertake a reasonable inquiry into its allegations. Accordingly, this Court finds that defendants' motion for sanctions should be denied.

## CONCLUSION

IT IS HEREBY ORDERED THAT plaintiff's first, second, third, fourth, and seventh claims for relief against the Duferco defendants are DISMISSED without prejudice.

IT IS FURTHER ORDERED THAT plaintiff's fifth, sixth, ninth and tenth claims for relief are DISMISSED with prejudice.

IT IS FURTHER ORDERED THAT plaintiff is granted THIRTY (30) DAYS' LEAVE, computed from the date of the filing of this Opinion and Order, to amend its first, second, third, fourth, and seventh claims for relief consistent with this Opinion and Order.

IT IS FURTHER ORDERED THAT defendants' motion for sanctions is DENIED.

SO ORDERED.